## Kentucky Cab Company v. City of Louisville et al.

(Decided June 21, 1929.)

J. FRANKLIN FAIRLEIGH, J. J. KAVANAUGH and M. D. ELSTON for appellant.

WM. T. BASKETT for appellee.

Opinion of the Court by Judge Rees—Affirming.

The appellant, Kentucky Cab Company, a corporation authorized by its charter to engage in the taxicab, baggage transfer, and ambulance business, owns and operates a number of taxicabs in the city of Louisville. On December 19, 1928, the general council of the city of Louisville adopted an ordinance requiring owners and drivers of taxicabs to procure a permit or license before operating on the streets of the city, fixing the rate of fare that may be charged, and prescribing other regulations. Conceiving that the ordinance is illegal and void, the appellant brought this action to enjoin the city and various city officials from enforcing its provisions.

Appellant's criticism of the ordinance is directed to sections 5, 6, and 7 thereof.

Section 5 provides that before any permit is issued for a taxicab, the owner shall file with the board of public safety a policy of accident insurance in some good and solvent incorporated insurance company, licensed and admitted to do business in Kentucky, which policy shall continuously cover each and every taxicab owned and operated or leased by the applicant, and by which the insurance company shall be liable in the sum of not more than $5,000 for any one accident resulting in bodily injury to or the death of one person, and not more than $10,000 total liability on account of any one accident. The policy shall further provide that the insurance company shall be liable in the sum of $1,000 for any or all property damage which may occur by reason of the negligent or careless operation of any taxicab covered by the policy.

In lieu of the liability insurance it is provided that the applicant for a license may deposit with the board of public safety a bond with a corporate surety approved by the board in the sum of not less than $30,000 running to the city of Louisville, conditioned that in the event of any injury or damage to any person or property growing out of negligence in the operation of any taxicab owned, operated, or leased by the insured, the person or persons so injured in his or their person or property shall have a right of action thereon in not exceeding the sums above mentioned.

Section 6 provides that each taxicab shall be equipped with a taximeter of such type and design as may be approved by the board of public safety, which shall be subject to inspection from time to time by the bureau of weights and measures or by the board of public safety. A "taximeter" is defined in the ordinance as "any instrument or device attached to a vehicle measuring mechanically the distance, time or zone unit upon which the taxi fare is based, and recording by figures on a dial the fare as it accrues."

Section 7 provides that the taxicab license granted in the ordinance may be revoked at any time by the board of public safety if the vehicle shall be used for immoral or illegal purposes, or if the driver of the vehicle shall be convicted of a violation of any city, state, or national law, or if the owner or driver shall violate any of the terms of the ordinance and that the license so revoked shall not be reissued.

In Commonwealth of Kentucky, for the use and benefit of the City of Hazard, v. Kelley, 229 Ky. 722, 17 S. W. (2d) 1017, it was held that an ordinance requiring owners and operators of taxis to carry liability insurance was valid; the court saying: "As the requirement of liability insurance is in furtherance of the public safety, the situation is one where the rights of the individual will have to give way to the higher rights of the public. We therefore rule that the requirement is not an unreasonable exercise of the police power." That decision is in harmony with the decisions of other jurisdictions in which the validity of similar legislation has been uniformly sustained. A statute requiring operators of motor vehicles for hire, excepting street cars and omnibusses, to secure insurance for the protection of persons injured by their operation, was held to be valid by the Supreme Court of the United States in Packard v. Banton, 264 U. S. 140, 68 L. Ed. 596, 44 S. Ct. 257. A collection of the cases from numerous jurisdictions upholding the validity of statutes and ordinances requiring owners or operators of automobiles for hire to carry insurance for the protection of persons who may be injured will be found in a note to the Banton case in 68 L. Ed. 596.

Appellant insists, however, that section 5 of the ordinance is void for uncertainty, since neither the kind of insurance nor the extent of the liability thereunder is fixed. It is argued that it is not clear from a reading of section 5 of the ordinance whether the required insurance refers to insurance upon an injured third person regardless of the existence or nonexistence of negligence in the operation of the taxicab causing the injury, or to insurance against loss arising from injury to the person or property of a third person through the negligence of the insured taxicab owner. A reading of section 5 as a whole leads to the conclusion that its purpose is to protect third persons, including passengers and pedestrians, against the negligent operation of taxicabs in the streets, and not to require the owners of taxicabs to be insurers against all accidents. In describing the kind of policy required the following language is used: "Said policy shall further provide that insolvency or bankruptcy of the insured shall not release the insurance company from any payment due under said policy and, if by reason of such insolvency or bankruptcy, an execution on a judgment against the insured is returned unsatisfied, the judg-

ment creditor shall have a right of action against the company.'' And the last paragraph of section 5, providing for a bond in lieu of insurance, reads in part as follows: ''Provided, however, that the owner of any taxicab may, in lieu of carrying liability insurance as herein provided, deposit and maintain throughout the term of the said premium . . . a bond . . . conditioned that in the event of any injury or damage to any person or property growing out of the negligence of any* taxicab owned . . . the person so injured shall have a right of action thereon.'' These excerpts from section 5 of the ordinance plainly show that it was the intention of the general council to require taxicab owners to carry insurance against loss arising from injuries negligently caused to the person or property of another.

Motor busses run and operated on established routes are excepted from the provisions of the ordinance, and it is argued that the ordinance is invalid because it unreasonably discriminates between taxicabs and motorbusses. The classification by which motorbusses run and operated on established routes are exempted from the provisions of the ordinance is reasonable and not arbitrary. Reo Bus Lines Co. v. Southern Bus Line Co., 209 Ky. 40, 272 S. W. 18. There are valid reasons for such a classification. Motor busses are operated on established routes, have regular schedules, and take on and discharge passengers at regular stops. Taxicabs ply the business of transporting passengers indiscriminately, accepting and discharging them at any point, and operating at all hours of the day and night. In answering a similar argument, the Supreme Court of Illinois, in Weksler v. Collins, 317 Ill. 132, 147 N. E. 797, said: ''But it is asserted that the act under review is arbitrarily discriminatory because it singles out taxicabs, and the classification is not based upon any substantial difference, either in construction or operation, from the vast majority of other motor vehicles. Taxicabs are operated for gain, and hence are in service during longer periods of the day and night over all streets, and usually at higher rates of speed than motor vehicles devoted solely to private pursuits, whether of business or pleasure. Motor trucks are operated principally in daylight, over fewer streets and at lower speeds than taxicabs. The presence of taxicabs in the congested streets of large cities increases the probability of accidents and consequently of personal injur-

ies. The Legislature is vested with a broad discretion in making classifications in the interest of the public safety. The question of classification is primarily legislative and only becomes judicial when the legislative action is clearly unreasonable. Heartt v. Village of Downers Grove, 278 Ill. 92, 115 N. E. 869; Cooley's Const. Lim. (7th Ed.) p. 236. Statutes similar in character to the one in question here have been enacted in a number of states, and, except in certain instances as to particular provisions found to be arbitrary or unreasonable, have been sustained as a proper exercise of the police power.'' Also see Packard v. Banton, supra, and cases therein cited.

It is also argued that section 6 of the ordinance, which provides that each taxicab shall be equipped with a taximeter of such type and design as may be approved by the board of public safety, is void because the requirement in regard to taximeters is arbitrary and unreasonable. For the prevention of fraud the city may, under the police power, require a public carrier, which is operated on a basis of charging for distance, to carry some device which will enable the passenger to know that he is not being overcharged, just as it may provide for the regulation or standardization of weights and measures to enable purchasers of commodities to protect themselves from short weights and measures. The general council may require the use of a taximeter which is accurate and reliable, and it will not be assumed that the board of public safety, which is charged with the duty of determining the sufficiency of the type used, will act arbitrarily and unreasonably refuse to approve a type or design of taximeter that is sufficient for the purpose intended. Until the board does act arbitrarily and unreasonably an applicant for a license cannot complain.

It is finally contended that the ordinance is invalid because section 7 thereof is void. It is contended that section 7 is void because it vests absolute and final power in the board of public safety to declare a forfeiture without providing for notice and hearing by the board. Whether section 7 of the ordinance is invalid or not is not now before us for determination, since appellant has not obtained a license or permit under the ordinance and no question of revocation is involved. Even if section 7 is invalid, the other sections would not be affected. This section has no bearing upon the other sections of the ordinance, nor is it dependent upon any other section, nor

is any other section dependent upon it. The rule, therefore, that where a portion of an act is valid and a portion invalid and the court cannot say that the legislative body would have passed the act with the invalid portion eliminated, then the entire act must be held invalid, has no application, and the general rule applies that if different sections of a statute or ordinance are independent of each other that which is invalid will be disregarded and the valid sections will be allowed to stand. City of Elizabethtown v. Purcell, 219 Ky. 554, 293 S. W. 1096; Underwood v. Wilhite, 139 Ky. 116, 129 S. W. 548. Furthermore, it is expressly provided in section 12 of the ordinance that its provisions are severable, and if any of them shall be held void for any reasons whatsoever, the decision of the court shall not affect or impair any of the remaining provisions thereof, and it is declared as a legislative intent that the ordinance would have been adopted had such unconstitutional provision not been included therein.

We conclude that the judgment of the chancellor dismissing the petition was proper, and it is affirmed.

The whole court sitting.