## Earhart v. Middendorf et al.

(Decided December 13, 1929.)

JOSEPH C. HEALY for appellant.

ALFRED P. LEWIS, J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellees.

DODD & DODD and ROBT. L. PAGE, amici curiae.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The question involved in this appeal is whether chauffeurs who drive taxicabs which are operated for hire, but not between fixed termini or over any regular route, must pay the license fee of $12.50 prescribed by section 2739j-32 of Baldwin's 1928 Supplement to the Statutes, this section being section 32 of chapter 112 of the Acts of 1926, or are liable only for the license fee of $2 provided for by section 2739g-16 of the 1922 Edition of the Statutes; this latter section being section 4 (b) of chapter 90 of the Acts of 1920. The lower court held they were liable for the license fee of $12.50, and from its judgment so adjudging this appeal is prosecuted.

For convenience we shall hereafter refer to taxicabs operated for hire, but not between fixed termini or over any regular route, simply as taxicabs.

Unless section 4 (b) of chapter 90 of the Acts of 1920 (section 2739g-16 of the 1922 Edition of the Statutes) has been superseded by chapter 112 of the Acts of 1926 in so far as chauffeurs who drive taxicabs are concerned, then it is conceded that such chauffeurs are liable only for the license fee of $2 prescribed by the 1920 act, even as chauffeurs who drive automobiles for wages in private employment are. Chapter 112 of the Acts of 1926 does not in express terms refer to chapter 90 of the Acts of 1920. But that the 1926 act repeals by implication all the provisions of the 1920 act in so far as the latter act touches upon the regulation, supervision, and administration of motor transportation in this commonwealth for compensation is asserted because of section 41 of the 1926 Act (Ky. Stats. Supp. 1928, sec. 2739j-41), which reads:

"Chapter 81 of the Acts of the General Assembly of 1924 is hereby repealed and this act shall embrace all of the law upon the subject of the regula-

tion, supervision and administration of motor transportation in this Commonwealth for compensation.''

That the 1926 act does not, and was never intended by the Legislature to, accomplish what a literal reading of section 41 alone would seem to indicate as its purpose, is made manifest when we turn to section 27a of that act (Ky. Stats., Supp. 1928, sec. 2739j-27a) which reads:

"Any person, firm or corporation operating motor vehicles for the transportation of persons for hire wholly within the corporate limits of any city or town, where the highway is not maintained in whole or in part by the state, county or federal government, you-drive-its, jitneys, taxicabs and busses operating on casual trips shall not be construed to be under any of the provisions of this act, except as to the payment of fees, but they shall not be exempt from the payment of any municipal, state or local license fee.''

Thus we see that very large classes of motor transportation for hire are excluded from *every* provision of the 1926 act except the payment of the fees prescribed by that act. When we exclude these classes of motor transportation, all that is left, so far as classes of motor transportation for hire were known at the time of the passage of the 1926 act or as are now known, is motor transportation for hire over regular routes or between fixed termini over the public highways of the state, and even where this class is wholly within a town whose streets are not wholly or in part maintained by the state, county, or federal government, it is excluded from all the provisions of this act except the payment of fees. Thus to say that section 41 means what a literal reading of it taken alone would indicate is to shut the eyes to just what the act does cover. In fact, the act does not by its very terms embrace all of the law upon the subject of the regulation, supervision, and administration of motor transportation in this commonwealth, for large classes of such transportation are excluded from its operation except as to the payment of fees. Nor can it be said that by their exclusion from the provisions of the act and by the terms of section 41 of the act, the Legislature meant these classes to be independent of any regulation. Thus section 28 of the act (Ky. Stats., Supp. 1928, sec. 2739j-28) provides that municipalities and local subdivisions

may make reasonable local police and traffic regulations to govern motor transportation companies operating between fixed termini or over a regular route. The exclusion of taxicabs from the provisions of the 1926 act plainly does not exempt them from such local police and traffic regulations despite the provisions of section 41 of the act. Indeed, such regulations of taxicabs by an ordinance adopted by the city of Louisville since the passage of the 1926 act have been upheld by this court as valid. Kentucky Cab Co. v. City of Louisville, 230 Ky. 216, 18 S. W. (2d) 992. It is true nothing is said in this case about this 1926 act, but it never occurred either to astute counsel in that case nor to the court that it could be argued that taxicabs were exempt from local police regulations because of the 1926 act. As said in the case of Commonwealth v. Louisville Taxicab & Transfer Co., 210 Ky. 324, 275 S. W. 795, "the rule is that, in construing an act, it must be considered as a whole, and so construed, if possible, as to give effect to every part thereof, and to produce a harmonious whole." Applying this rule to the 1926 act, it is plain that its purpose was to regulate motor transportation for hire between fixed termini or over regular routes, and except as to payment of certain fees·was not intended to embrace any other class of motor transportation for hire. We say this with full knowledge of its title, part of which reads:

"An Act . . . providing for the supervision, control and regulation of motor transportation of persons for hire over the public highways of Kentucky; . . . providing for the examination and qualification of drivers of such motor vehicles and fixing a fee therefor; providing for the supervision and regulation of fares, schedules and routes of such motor vehicles." Acts 1926, c. 112.

As we have seen, the act is not as broad as its title, nor was it intended so to be. Although a title under section 51 of the Constitution must be broad enough to cover the act to which it is the title, yet there is nothing which prohibits the title being broader than the act.

With these observations in mind, we turn to section 32 of the 1926 act (Ky. Stats., Supp. 1928, sec. 2739j-32), which it is claimed prescribes a license fee of $12.50 for chauffeurs of taxicabs. That section reads:

"No person shall be permitted to drive any automobile or motor bus for the transportation of

persons for hire between fixed termini or over a regular route, as provided under this act, until said person has been granted a certificate by the commissioner. Any person desiring to drive an automobile or a motor bus for hire shall file with the commissioner his application and shall pay to said commissioner a fee of twelve dollars and fifty cents (12.50) annually. Said application shall contain the name of the applicant, the experience he has had in the operation of motor vehicles, a certificate from some reputable physician as to his eyesight, and condition of health and habits. Before the said applicant is granted a certificate, he shall be required to take such tests or examinations as the commissioner may require. The said application, if granted, shall be subject to cancellation upon due notice to the holder thereof for ten days before the hearing and said certificate shall be cancelled if said applicant violates any of the rules and regulations prescribed by the commissioner. No certificate shall be issued to any person under twenty-one (21) years of age. If any certificate shall be cancelled the holder thereof shall return badge issued to him by the commissioner to said commissioner.''

The only other places in the act where drivers are mentioned are sections 8, 33, 35, and possibly section 34 (Ky. Stats., Supp. 1928, secs. 2739j-8, 2739j-33, 2739j-35, and section 2739j-34). Section 8 reads:

''It shall be unlawful for any person, firm or corporation to operate a motor vehicle for transportation of passengers for hire, between fixed termini or over a regular route, without the driver having a certificate from the commissioner, and wearing a badge issued by the commissioner, showing that said driver has taken examination and passed with a satisfactory grade the following: Driving ability, intelligence, experience, habits and holding a doctor's certificate.''

Section 33 of the act, which follows section 32, under the provisions of which it is sought to impose this license fee of $12.50, imposes the duty of stopping the motor vehicle before crossing railroad tracks upon drivers of

motor vehicles operating "between fixed termini or over a regular route." Section 35 reads:

> "The said commissioner shall furnish a metal badge for each licensed driver of such motor vehicles which badge shall be worn by said driver at all times when on duty."

The last time motor vehicles are mentioned before the appearance of this section 35 is in section 33, where they are confined to motor vehicles operating "between fixed termini or over a regular route." The words "such motor vehicles" in section 35 must refer to the motor vehicles mentioned in section 33, which are those operated between fixed termini, since relative words are construed as referring to their nearest antecedent. 6 R. C. L. 846.

Section 34 reads:

> "The commissioner shall issue certificates over his signature, attested by the seal of the Commonwealth of Kentucky. The said commissioner shall keep a numerical record of all certificates issued under the provisions of this act."

Section 1 of the act (Ky. Stats., Supp. 1928, sec. 2739j-1) provides that the term "certificate" in the act means "a certificate of public convenience and necessity authorized to be issued under the provisions of this act." Despite this provision of section 1, it is plain that the term "certificate" in section 32 of the act has no such meaning, otherwise absurdity would result. It is not necessary to decide here whether the term "certificate" in section 34 of the act means the certificate of section 32 or the certificates provided for elsewhere in the act and as defined by section 1 of the act. It will have been noted that in section 32 of the act, the first sentence reads: "No person shall be permitted to drive any automobile or motor bus for the transportation of persons for hire between fixed termini or over a regular route, as provided under this act, until said person has been granted a certificate by the commissioner." And the second sentence reads: "Any person desiring to drive an automobile or a motor bus for hire shall file with the commissioner his application and shall pay to said commissioner a fee of twelve dollars and fifty cents ($12.50) annually." Because there was left out of the second sentence either

the word "such" before the word "automobile" or the words "for hire between fixed termini or over a regular route" after the words "for hire," it is argued that it was intended by section 32 to embrace all chauffeurs who drive automobiles let for hire. This is a very strained construction to put upon this section. Nowhere else in the act is any chauffeur referred to except chauffeurs of vehicles covered by the act, and, as we have seen, taxicabs are not covered by the act except as to the payment of fees. That taxicabs are subject to payment of the fees cannot be urged as ground for requiring their chauffeurs to be subject to the fees of the act, for section 27a of the act does not mention chauffeurs. Now, as well stated in the brief of amici curiæ:

"If it was the intention of the General Assembly in adopting section 32 of the Act to require all persons who were driving an automobile for hire to pay $12.50 instead of, as we contend, requiring all drivers of automobile or motor busses for hire over the highways and between fixed termini, then there was no necessity for placing in section 32 the first sentence or in section 33 the first sentence, or in section 8 the inhibition against the operation of motor busses between fixed termini and over a regular route before the driver has secured the license. In other words, there would be no necessity to mention at all in either of those sections the operation of motor busses for hire *between fixed termini or over a regular route* if every driver of every kind of motor vehicle for hire was covered by the second sentence copies supra.

"The General Assembly could simply have said as much and left out of each of those sections the sentence '*between fixed termini and over a regular route,*' and accomplished the purpose contended for by the opposition."

It is passing strange, if the Legislature meant by section 32 of the act to create two classes of chauffeurs, (1) Those who drive motorbusses for hire between fixed termini or over regular routes, and (2) chauffeurs who for wages drive motor vehicles let for hire, that no duties are placed upon the second class by any provisions of the act, whereas all the duties put upon chauffeurs by the act are confined to the first class. Why, if taxicab chauf-

feurs must obtain the license provided for by section 32 of the act, is the prohibition against permitting a motor vehicle in which passengers are carried for hire to be operated by a chauffeur without such a license confined to motor vehicles traveling between fixed termini or over a regular route? Yet section 8 of the act, which forbids the operation of a motor vehicle by a chauffeur unless he has the certificate provided for by section 32, applies only to motor vehicles traveling between fixed termini or over a regular route.

Again analyzing section 32 of the act, we find that by the first sentence those who wish to drive a motor vehicle for hire between fixed termini must procure a certificate. Nothing is said about a certificate in the second sentence, which it is claimed fastens upon chauffeurs of taxicabs the liability for this $12.50 license fee. The third sentence of section 32 relates to the information to be furnished with the application for a license. The fourth sentence reads: "Before the said applicant is granted a certificate, he shall be required to take such tests or examinations as the commissioner may require."

But the only driver who is required to obtain a certificate is a driver of a motor vehicle for hire between fixed termini. Hence it is plain that the Legislature meant by the term "applicant" only such drivers and never intended to include taxicab chauffeurs within the purview of section 32. It seems patent to us that section 32 of the act was never intended by the Legislature to deal with two classes of chauffeurs, but one only, and that class the one described in the first sentence of section 32.

As, in our judgment, section 32 does not cover taxicab chauffeurs, it follows that they are not liable for the $12.50 license fee which that section prescribes and that they are liable only for the $2 license fee imposed by the 1920 act. The judgment of the lower court is therefore reversed, with instructions to enter a judgment in conformity with this opinion.

Whole court sitting.

Judges WILLIS, LOGAN and GRIGSBY dissent.

### Dissenting Opinion by Judge Willis.

The question involved is one of statutory construction. Our duty is to ascertain the intention of the Legislature and to allow it to prevail. In doing so we construe the terms employed in formulating the statute in the light of the object sought to be accomplished. See cases cited in West's Kentucky Dig. Statutes, sec. 181.

A brief reference to the history of legislation upon the subject is necessary in order that the background of the enactment may be understood. Chapter 90 of the Acts of 1920 related generally to the regulation of the use and operation of motor vehicles. Acts of 1920, p. 415. Section 4 (a) of that act required the registration of chauffeurs, and section 4 (b) imposed upon them an annual fee of $2. Chauffeurs subject to the tax were defined in the act, section 1 (c), Ky. Stats., sec. 2739g-1 (c), to mean "a person whose business or occupation, in whole or in part, is the operation of an automobile for compensation, wages or hire. It applied to all employed drivers regardless of the character of the car to be driven. The only qualification required of drivers in order to obtain registration by paying the fee was that the applicant be vouched for by two reputable citizens who had known him for not less than 60 days. In 1924 the act was amended to provide "for additional supervision and regulation for the transportation of persons for compensation over public highways by motor propelled vehicles." Chapter 81, Acts 1924. This act first introduced the phrase "between fixed termini or over a regular route," and defined it to mean "the termini or route over which any auto transportation company usually or ordinarily operates any motor propelled vehicle, even though there may be departures from said termini or route, whether such departure be periodic or irregular." Section 1 (f). By that act the state highway commission was given jurisdiction to exercise the powers granted and perform the duties imposed by the act.

It contained no provision respecting license fees to be paid by chauffeurs, leaving in full force the existing law upon that subject. It did impose certain fees upon motor vehicles carrying passengers for hire. Section 19. It also provided that none of its provisions, except section 19 requiring the payment of fees, should apply to any motor vehicle with carrying capacity of five persons or less. This court, strange to say, construed the act to

exclude taxicabs from its regulations, including those provisions respecting the license fees. Commonwealth v. Louisville Taxicab & Transfer Co., 210 Ky. 324, 275 S. W. 795. The objects of the legislation, as explained in Childress v. Riggs, 212 Ky. 225, 278 S. W. 575, were: First, to provide reasonable regulation of motor transportation companies operating on the public highways, as a protection to the public; and, second, to provide funds to help repair and maintain the highways, which were impaired by such use. In 1926, the Legislature repealed chapter 81 of the Acts of 1924 and substituted therefor the present act. Chapter 112, Acts of 1926 (Ky. Stats., Supp. 1928, secs. 2739j-1 to 2739j-41, inclusive). The act itself declares (section 41) that it "shall embrace all of the law upon the subject of the regulation, supervision and administration of motor transportation in this Commonwealth for compensation." That is an explicit and unmistakable declaration of the purpose of the Legislature. Even in the absence of express provision, it is the rule that a complete act for the regulation of a particular subject supersedes and repeals pro tanto all general laws regulating that matter. Head v. Commonwealth, 165 Ky. 603, 177 S. W. 731; Commonwealth v. Boyd, 181 Ky. 382, 205 S. W. 390.

The title of the act, as may be seen from the majority opinion, expressly provided for the examination and qualification of drivers of motor vehicles used in the transportation of persons for hire and for fixing fees therefor. That portion of the title plainly contemplated the fixing of fees for all drivers of motor vehicles engaged in carrying for hire. It is said that the title is broader than the act, but that depends upon the construction put upon the act, and assumes the very question at issue. It certainly manifests an intention on the part of the Legislature to include in the act as to fees all drivers of motor vehicles transporting persons for hire over the public highways in Kentucky. The title of an act may be resorted to for the purpose of ascertaining the intention of the lawmakers, and if the construction of the law be doubtful, the interpretation indicated by the title will be adopted as within the spirit and letter of the law. Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008; Kinnaird v. Commonwealth, 134 Ky. 575, 121 S. W. 489; Commonwealth v. Barnett, 196 Ky. 731, 245 S. W. 874; Board of Drainage Commissioners v. Stephens, 213 Ky. 30, 280 S. W. 456.

Section 1 of the act of 1926 contains a definition of terms used therein, and section 1a defines the term "public highway" to mean "every street, road or highway in this state, whether within or without the corporate limits of any municipality." Section 1b defines the term "between fixed termini, or over a regular route" to mean the "termini or route, respectively, between or over which any motor transportation company usually or ordinarily operates any motor vehicle, even though there may be periodical or irregular departures from said termini or route, provided said termini or route is not wholly within the limits of a single incorporated municipality." Section 1c defines the term "motor vehicles" to mean "any motor propelled vehicle not usually operated over or on rails or any motor vehicle operated for transportation of persons by any motor transportation company." Section 2 of the act forbids the operation of "any motor propelled vehicle for the transportation of persons for compensation on any public highway in this state except in accordance with the provisions of this act."

It will be observed that section 2 is broad enough to cover, and most certainly includes, taxicabs and the drivers thereof, operating within a city for the transportation for hire of persons to or from any place within the city. Section 3 of the act provides when and how a motor transportation company may obtain the exclusive right to operate between fixed termini or over a regular route  That the statute applies in part at least to taxicabs and other motor vehicles not operating over any route or between fixed termini is made plain by section 21a thereof, defining casual trips by taxicabs and certain other vehicles in limited competition with busses having a certain route exclusively set apart to them. Furthermore, section 27 imposes graduated fees upon various vehicles, and includes taxicabs which do not operate upon a regular route or between fixed termini; and section 27a provides that U-drive-its, jitneys, taxicabs, and busses operating on casual trips, as defined in the act, are excepted from the provisions thereof, except the provisions requiring the payment of fees which expressly apply to such vehicles. If this provision exempts taxi drivers from the regulations, it holds them for the fees. Section 32 forbids any person from driving an automobile or motorbus for the transportation of persons for hire between fixed termini or over regular routes as provided by the act until he has been granted a certificate by the

commissioner. It further provides: "Any person desiring to drive an automobile or a motor bus for hire shall file with the commissioner his application and shall pay to said commissioner a fee of twelve dollars and fifty cents ($12.50) annually." It makes further provisions to be complied with as a condition precedent to the right to obtain a license. The section plainly contemplates and covers two classes of drivers of motor vehicles for hire, namely: (1) Those that drive motor vehicles carrying passengers for hire on regular routes between fixed termini; and (2) those that drive motor vehicles carrying passengers for hire, but not upon regular routes or between fixed termini. Its language is clear and unambiguous.

In order to exempt the drivers of taxicabs from the operation of section 32, the majority opinion reads into it words which were omitted by the Legislature. It is said that this is rendered necessary, as otherwise there would be no reason for employing two sentences where one would have sufficed. It is true the Legislature could have employed different language, and it may be difficult to determine what it meant by the use of the word "certificate" in section 32 of the act in view of the definition given that word in section 1 of the act. But the absurd consequences supposed to flow from the use of the word "certificate" is not relieved by the construction adopted by the majority. That criticism applies with equal force regardless of the construction adopted, and it is not necessary for us to decide what "certificate" means when used in section 32 or section 34 any more than it is necessary for the majority to determine that meaning. The words in section 35 to the effect that the commissioner must furnish a metal badge for each licensed driver of such motor vehicles refers to all drivers of motor vehicles, and is not limited by the preceding sections relating only to those operating between fixed termini any more than it relates to preceding sections not so limited. It is said that if full effect be given section 41 by which this act shall embrace all the law upon the subject of transportation for compensation by motor vehicles and that all acts or parts of acts in conflict with it are repealed by section 42, the local regulations by the various municipalities would likewise be stricken down. But such is not the result. It means that the act is the entire state law upon the subject and it expressly preserved local police and traffic regulations as well as local

license fees imposed by cities. Section 27a preserves the power of municipalities to impose local license fees upon taxicabs, and their drivers, and section 28 exempts motor companies operating between fixed termini or over regular routes from paying local fees; but that act expressly preserves to municipal and local subdivisions the power to make reasonable local police and traffic regulations consistent with state law and not inconsistent with the provisions of this act. That general power is not confined to such regulations of motorbusses operating between fixed termini. It preserves the general police power already possessed by the cities except in so far as delimited by the act. A conclusive answer to the suggestion that the Legislature by the declaration of section 41 meant to confine the law solely to motor vehicles operating between fixed termini or over regular routes is the fact that chapter 81 of the Acts of 1924 and chapter 112 of the Acts of 1926 are the only laws ever enacted by the state which used the classification of motor vehicles operating between fixed termini or over regular routes. Chapter 81 was expressly repealed, so that it puts the Legislature in the ridiculous attitude of declaring that a statute was the whole law upon the subject when it was the only statute in existence relating thereto. Certainly it was thought by the Legislature that other vehicles were affected besides those operating between fixed termini, referred to in chapter 81 of the Acts of 1924 and chapter 112 of the Acts of 1926, because it repeals all laws in conflict with it.

It appears to us very plain that the statute was designed to exact a license fee from all drivers of motor vehicles operated for hire, and was not limited to one class of such drivers. The act by its express terms, is meant to cover the entire subject, and if it does not apply to the drivers of taxicabs, such as appellant, then no provision is made for them, since the act of 1920 is not in force as to drivers of motorcars which operate as carriers for hire, being repealed by sections 41 and 42 of the last act. It is my view that section 4b of the act of 1920 applies to chauffeurs who do not drive motor vehicles operated by common carriers or private carriers for hire, but drive automobiles for wages in private employment; whilst section 32 of the act of 1926 applies to all drivers of motor vehicles employed by carriers operating motor cars for hire, whether they be taxicabs operating within a city, or motorbusses operating

between fixed termini and over a regular route. The contrary construction results in depriving the state of a substantial revenue, and in leaving the public without the protection supposed to be derived from a responsible, experienced, controlled, and licensed body of drivers of dangerous vehicles devoted to the public service as common carriers for compensation.

It seems clear to me that the county clerk was right in demanding from appellant a fee of $12.50, and that the circuit court was right in refusing the relief sought by appellant.

I am authorized to say that Judges Logan and Grigsby concur in this dissent.