## Talbott, Auditor of Public Accounts, et al. v. Laffoon, Governor, et al.

(Decided Dec. 14, 1934.)

CLIFFORD E. SMITH, CLYDE E. REED, SAMUEL M. ROSEN-STEIN and JAMES BREATHITT, Jr., for appellants.

BAILEY P. WOOTTON, Attorney General, and F. M. BURKE and S. H. BROWN, Assistant Attorneys General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At its regular 1934 session the General Assembly of the commonwealth of Kentucky enacted chapter 155, p. 679, Session Acts for that year, and which is sections 4618-1 to and including 4618-67, of Baldwin's 1934 Supplement to Carroll's Kentucky Statutes. This action, filed in the Franklin circuit court by J. Dan Talbott, auditor of public accounts for the commonwealth, and Frank Dacher, as deputy insurance commissioner in charge of securities of the commonwealth, in their official capacities and as taxpayers, against Hon. Ruby Laffoon, Governor, and other officials of the commonwealth having duties to perform in administering and carrying out the provisions of the chapter, seeks to annul it upon various grounds set forth in the petition; but practically the only one seriously argued in this court is that the act was passed in violation of the

provisions of section 51 of our Constitution, mainly, if not chiefly, because its title is not in conformity with that section, and that the body of the act departs from its alleged defective title. The learned trial judge of the Franklin circuit court concluded that such contention, and other less important ones made in the petition as amended, were unsound and dismissed the petition, to reverse which plaintiffs prosecute this appeal.

At the outset of this opinion, we cannot refrain from expressing our admiration for the great earnestness as well as seriousness of counsel for plaintiffs as manifested in their brief filed in this court in presenting the contentions made in the petition, and especially so as to the argued invasions of the provision of the constitutional section 51. Such labor on the part of counsel no doubt emanates from the commendable quality of loyalty to clients by attorneys representing them and for the cause that they represent; but which, though made and done in all sincerity and in the best of faith, cannot be sustained when tested by declared and approved applicable rules governing the question. Therefore we conclude that the arguments and points made in briefs of appellants' counsel and contentions so extensively discussed do not reach the question involved, and are therefore nonconvincing. For that reason we shall not undertake in this opinion to follow counsel, or endeavor to answer in detail their exhaustive brief, which we are confident is due to a misconception of the intended scope and limitations of the constitutional provisions referred to, and of a misinterpretation of the attacked title.

The entire title to the act is in these words: "An act to reorganize and simplify the executive department of the state government for the purpose of providing for better service and economy, through the enactment of an administrative code providing for the administrative departments and independent agencies therein specified; redistributing the powers and duties of the existing offices, departments, boards, commissions, institutions, and other agencies among them; abolishing certain offices, departments, boards, commissions, institutions, and other agencies; creating certain others; continuing certain others; transferring certain others; defining the organization, powers and duties of officers, departments, boards, commissions, and other agencies

that are hereby created or retained and providing for their coordination; fixing and providing for the fixing of certain salaries; fixing terms of office, methods of appointment, and election to, duties of, qualifications for, and methods of removal from offices and positions; and repealing all laws and parts of laws in conflict herewith.'' The body of the act is divided into articles and sections, the first one declaring that it shall be known as the ''Administrative Reorganization Act,'' and to undertake to set out in detail what it contains from its beginning to its ending would require more time and space than we deem necessary for the disposition of the appeal. We will therefore make references to its provisions only in a general way and as we conceive is proper for the purposes of the case.

Section 51 of our Constitution, and like provisions in Constitutions of other states, is of comparatively modern origin, and the purpose of the people in incorporating it as a part of their fundamental law was to prevent the evil that had grown up of legislating in one act upon as many distinct and wholly disconnected subjects as the legislative body saw fit, without any indication in the title of the act as to what its contents might be. Prior to the adoption of such a provision, the title to an act might clearly indicate that it related to a specifically named subject, or to a number of named subjects, with the body of it containing provisions for a wholly distinct and unconnected subject or subjects than what was mentioned in the title. It was then competent for the Legislature to legislate upon a multiplicity of unrelated subjects which were neither remotely germane to, or in any wise connected with, the one or ones named in the title, and which, as we are advised, is yet true with reference to congressional legislation. To circumvent such deceptive practices resulting in deceitful, selfish, and other baleful consequences, the provision was inserted in the Constitution requiring, inter alia, that no statute ''shall relate to more than one subject, and that shall be expressed in the title.'' Naturally and inevitably it became the practice that those who were adversely affected by a statute, and who desired to annul it, became extremely critical in their interpretation of the constitutional provision so as to, if possible, employ it in a manner to accomplish their desired result. Therefore the cases abound in contentions and argument seeking interpre-

tations of the section that its language does not warrant and which the convention adopting it never intended. Such arguments and contentions assume many forms, prominent among which is that detailed provisions of an act which are not mentioned or in any wise expressed in the title, though germane to the general subject stated therein, are fatal to the validity of the entire statute. In other words, we mean to say that such arguments and contentions were the children of a misconception of the purpose of such constitutional provisions, as well as born of a misinterpretation of its language; but which no doubt emanated from the loyalty hereinbefore referred to, and which, though erroneous, were and still are no doubt made in the best of faith.

Our investigation discloses that in some cases in some jurisdictions (some of which possibly may be found in our earlier opinions) courts have in a few instances been misled by such arguments, and were induced to pronounce and approve an unwarranted interpretation and application of the constitutional requirement. It will be noticed that the provision under consideration requires only that the act (i. e., the body of it) shall be confined to one subject, and that one subject shall be stated in the title. It does not inhibit the stating of another or other subject in the title, but to which the body of the act does not relate. In other words, a title is not faulty that contains a multiplicity of subjects, if and provided the body of the act relates only to one of them. See Earhart v. Middendorf, 234 Ky. 78, 27 S. W. (2d) 657, and authorities post.

It is further a fundamentally declared and well-settled rule that a title to an act, in order to conform to the constitutional requirement, need not contain a detailed index of everything that its body contains, but only that it furnishes a general notification of the general (but single) subject upon which its body may legislate. When the title is so framed, it is competent for the act to make any provision that is germane to such general notification contained in its title. So that (as has been expressly declared by some of the courts), if the title is sufficient to furnish "a clue to its contents," the constitutional provision is not violated. Cooley on Constitutional Limitations, vol. 1, p. 294. In considering the application of the constitutional pro-

vision, another rule has been evolved, and which is, that, although a title may begin with a generally designated subject, followed by restrictive language curtailing the scope of such general designation, and in such form as to confine the title to legislation within the restrictions only, then the body of the act may go no further than what is authorized by the restrictions, and such was the question presented and so disposed of by us in the case of South v. Fish, 181 Ky. 349, 205 S. W. 329, upon which counsel for appellant so implicitly rely.

The title to the act involved in that case (Acts 1918, c. 65) first stated the general subject by saying: "An act relating to public health," etc. That statement was followed by restrictive language, but the act added an entirely new section to the prior statute, and which was nowhere indicated, remotely or otherwise, in such restrictive language, which, as we have indicated, was sufficient to confine or limit the subject-matter of the act to such restrictive language. Such unauthorized added section repealed the then existing state board of health, and created another one in its place, and which, if valid, had the effect to require an entirely new set-up of administrators of the public functions created by the statute. It was for the very purpose of preventing any such corruptly pocketed and concealed legislation, for which the title furnished no clue whatever, that the section of the Constitution was adopted, and that interpretation was the only one involved and determined in that opinion. But it was furthermore recognized in that case, as it has been in a number of others since then (and perhaps also some prior ones), that the section of the statute declared invalid in that case would have been valid had the title stopped when it had stated the general subject to be, "An act relating to public health." In that event, it would no doubt have been competent for the Legislature to provide in the body of the act everything that was germane, or that which appertained to public health within the commonwealth, including provisions with reference to county and municipal boards of health, although no such details were in any manner stated in such general and unrestricted title. The reason why such detailed provisions would have been valid in the supposed contingency is because they would then be germane to the general subject stated in the title, and all of them together (because of their connection

with that general subject) would constitute but the one general subject to which the statute related, and which its title contained.

Another rule which all courts approve is thus stated by Mr. Cooley in the volume of his work supra, page 304: "There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been employed," and that "the title must be construed with reference to the language used in it alone, and not in the light of what the body of the act contains." On page 308 of the same volume relating to another rule hereinbefore mentioned the text says: "And plurality of titles is not an objection to an act which deals with but one subject. If there is but one subject in the act, and the title expresses more than one, the subject expressed in the title and not embraced in the act will be regarded as surplusage," and which is in accord with our Earhart opinion, supra. Another recent domestic case dealing with the subject is Campbell v. Commonwealth, 229 Ky. 264, 17 S. W. (2d) 227, 63 A. L. R. 932. In that opinion many prior domestic cases are referred to in which we, as was also done in that case, approved and followed the interpretative rules to which we have referred.

Bearing upon the question involved, and sustaining what we have thus far said, reference might be made to the text in 59 Corpus Juris. On page 794 it states: "Constitutional provisions relating to the subject matter of titles of statutes should * * * be construed liberally to uphold, rather than to cripple or impede proper legislation, all parts of which are reasonably germane, so that a statute may not be held void except in a clear case of violation of the constitutional requirements." Further along in that same section (372) it is said: "The requirement that the subject or object of an act shall be expressed in its title should be reasonably construed, and should be treated as requiring the expression in the title of the general subject or object of the act, as distinguished from the details or incidents thereof, or the means of effecting the objects sought, and as distinguished also from the purpose for which the statute was enacted or the reasons which brought about its

enactment." A long list of cases from many jurisdictions, including Kentucky, is cited in support of that text, the latter portion of which answers a large portion of briefs of counsel criticizing what they claim was the purpose and motives of the promoters of the attacked chapter 155 in this case, since its validity must be tested by the limitations imposed by the Constitution on the power and authority to enact it, regardless of motives that prompted its enactment. On pages 808 and 809 of the volume of Corpus Juris referred to, the text approves what we have hereinbefore said, and specifically points out that a statute will not be declared invalid as violative of such constitutional provisions, notwithstanding the title may be redundant and contain much surplusage, so long as it does contain the subject, although stated in general terms, with which the body of the act exclusively dealt, and which latter might consist in the providing of many details or means of effecting the object sought, so long as they are germane to a general subject expressed in the title.

Finally, it should be said that statutes of a codifying nature, the purpose of which is the consolidation of existing laws, with rearrangement of supervision in the execution of governmental functions to be performed, together with the enactment of new measures incidental thereto, are not inhibited by the constitutional provision under consideration, if the title is broad enough to indicate the purpose intended to be accomplished and the body of the act does not depart therefrom—one illustration of which is the enactment of codes of practice which deal with many remedies and rules of procedure entirely disconnected from each other, but all of which would be comprehended by a title saying "An act creating a civil (or criminal) Code of Practice." See 59 C. J. supra, 798, sec. 376; also pages 887 to and including 891. Indeed, we now have in our statutes laws that were adopted since the adoption of our present Constitution and which were enacted under a general title, but the body of which covered and dealt with many details and co-ordinated many independent matters, but all of which were germane to the general title. Two illustrations of such statutes are the chapters relating to the entire criminal law, the title to which was and is "An act relating to crimes and punishments," and the other one was "An act relating to corporations."

In the instant case the general subject of the act is "An act to reorganize and simplify the executive department of the state government * * * through the enactment of an administrative code." Some of the other recitations contained in the title express the hope or purpose of the Legislature to be accomplished by the enactment of the statute which is expressed by the words, "simplify," "for better service and economy," etc., and all of which general purpose is to be brought about by "the enactment of an administrative code providing for the administrative departments and independent agencies therein specified." The other language in the title points out how the act proposes to bring about such achievements and to designate some of the means through which it is to be accomplished. It was to be effected by the consolidation of some of them, changing the jurisdiction under which some of the administrative agencies theretofore operated, and redistributing the powers and duties of some of them and creating others that may be found to be necessary in the general reorganization provided for; also by modifying the duties of some of them, as well as making provisions for the removal of the personnel of the agents, employees, or officers having duties to perform in some of them, and finally repealing "all laws and parts of laws in conflict herewith."

Measuring that title by the established rules hereinbefore referred to, and keeping in mind that all doubts should be resolved in favor of the validity of the act, we are constrained to the conclusion that our constitutional provision contained in its section 51 was not violated in the enactment of the attacked statute, either because of defective title or because of multiple subjects in its body, and that the earnest contentions made to the contrary by distinguished counsel for plaintiffs can not be sustained. The attacked statute is rather a lengthy one, and many parts and provisions of it are criticized in an effort to show that they depart from the general subject, supra, stated in its title, or from the restrictions which counsel claim the title contains in its language following the statement in the title of the general subject. But we have carefully read all of such criticisms and compared them with both the title and the body of the act, and have been unable to find any such forbidden departure, or wherein the body of the act contains legislation applicable to more than

the one subject stated in its title. The attacked provisions will be found to contain provided details and means for the accomplishment of the general purpose of the title which courts everywhere declare, as we have hereinbefore pointed out, are not forbidden.

As illustrating the general tenor of counsel's argument, a large part of their brief is devoted to the contention that the provisions contained in the body of the act are not as extensive as its title would authorize; or, differently stated, that the act itself did not cover the entire field that was mapped out in the title. But that contention is answered by the rule hereinbefore referred to, the substance of which is that a title may be broader than the act, but an act may never be broader than its title; and by another one, equally as well established, to the effect that a statute will not be annulled as violating the constitutional provision because it is not as expansive as its title would have permitted, so long as its provisions are within and are germane to the broader subject stated in its title. From the foregoing, we deduce that the constitutional provision was not adopted as a block or an obstruction to legislation, nor to create the confusion which some of its employers portray in reliance upon it. On the contrary, its only purpose was to provide a general barrier against duplicitous legislation, but of no more mandatory force than we have outlined.

As hereinbefore said, it would carry this opinion far beyond due bounds to notice in detail every argument made by learned counsel in support of their general contention, and because of that fact, and for the further reason that such a course would not alter our conclusions or accomplish more than the performance of a tedious task, we have concluded to terminate the discussion of this question at this point, referring the reader to the act itself and to the cases and authorities we have cited, wherein such arguments are completely answered. However, it might be stated that it would not have been competent for the consolidating, and possibly some other, provisions of the statute, to have applied to constitutional offices, since the power and authority of the Legislature in such respects would necessarily be confined to statutory departments and agencies, and which was observed in the body of the act, there being nothing in it assuming any unauthoriz-

·ed power over constitutionally created departments or the constitutional officers functioning therein.

A second (though mild) attack of the act is that it is void because of the vagueness and uncertainty of its provisions, rendering it "incapable of construction or administration"; but we are not impressed with the argument made in support of that ground. On the contrary, the provisions of the act are reasonably plain and unambiguous. However, counsel point out two provisions thereof relating to the removal of the personnel of those who might be employed or engaged in the administration of the duties of the departments, which they claim renders the entire act invalid. We will not stop to point out the two provisions of the act which it is claimed are inconsistent in the respects indicated, since that question is not now before us, and we are admonished that, "Sufficient unto the day is the evil thereof." If a conflict over the exercise of such power of removal should occur in the future, and while the act is in force, the occasion will then arise for the determination of that question, and that bridge will not be crossed until we reach it; nor do we now express any determination with reference to the existence of such alleged conflict.

Wherefore, for the reasons stated, the judgment is affirmed—the whole court sitting.