## Russell, Sheriff, v. County Board of Education of Logan County.

(Decided Feb. 24, 1933.)

B. P. WOOTTON, Attorney General, S. H. BROWN, Assistant Attorney General, and JOHN A. WHITAKER for appellant.

COLEMAN TAYLOR and J. D. STANDARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, County Board of Education of Logan County, filed this declaratory judgment action against the appellant and defendant below, George C. Russell, the sheriff of the county, attacking the validity of chapter 142, page 670 of the Session Acts of 1932, and sought an injunction against defendant from purchasing real estate for and on behalf of plaintiff at his sales of land sold by him to recover taxes due plaintiff. As indicated in the title of the 1932 act, its purpose was to repeal and re-enact section 4151-2 of the 1930 editions of Carroll's Kentucky Statutes, which is a part of the chapter of that publication on Revenue and Taxation. After reciting such purpose, there is added as a part of the title these words:

"And providing for interest and penalty on lands sold for taxes and providing for redemption thereof." The body of the 1932 act repeals and re-enacts the former section 4151-2 (and which will be hereinafter referred to as the "old act") and makes some alterations therein, and it will hereinafter be referred to as the "new act." Only a portion of the old act as substituted in the new one is attacked, and which part relates to the penalty and interest to be exacted of the delinquent tax payers, the time for his redemption of his land, and the time when the purchaser at the tax sale (whether by the tax gathering authority, or a private individual) becomes entitled to the possession of the land if not redeemed by the taxpayer within the time provided for that purpose.

The old act prescribed that if no individual bid the amount of taxes, interest, commission, and costs at such sales, then the sheriff or collector making it was directed to buy the land for such total sum for and on behalf of the public agency levying and collecting the tax. He was then required to make certain returns and reports manifesting that fact to designated officials. It was then prescribed therein that the owner of the land should have the right to redeem it "within two years after the day of sale," but when done he would be required to pay 10 per cent. per annum on the amount with a penalty of 15 per cent. It was further provided that if the land was purchased for and on behalf of such public agency it "shall have the right to possession * * * at any time after the expiration of thirty days from the giving of the notice provided for in the next section"; but if the purchase was made by an individual, he could obtain possession at any time after the expiration of six months from the giving of such notice.

The new act with reference to such matters prescribes that the delinquent taxpayer, or owner of the land sold, may redeem his land "within five years after the day of sale," and reduced the annual interest to be paid by him to 6 per cent. and the penalty to 2 per cent. It also provided that if the land was purchased for any such public agency its right to possession would accrue "at any time after the expiration of five years allowed for redemption by giving thirty days' notice to the owner"; but if the purchaser was a private individual,

then his right to possession would not accrue until after "six months' notice to the owner" following the expiration of the five-year period for redemption. It will, therefore, be noticed that the only changes made in the old act by the new one concerned the period for redemption, the amount of the interest and the penalty, and the time when the right to possession by the purchaser would become perfected so as to entitle him to proceed under the remedies provided by law to obtain possession.

One attack made on the new act in the petition, and argued by learned counsel for appellee in his brief, was and is, that it conflicts with parts of sections 4021, 4153, 4154, and 4156, all of which (as well as the old section 4151-2 of the 1930 Edition of our Statutes) are parts of chapter 108 of the same edition of our Statutes relating to "Revenue and Taxation." Section 4021 gives to the taxing authority a lien upon the property assessed for taxation. Section 4153 is partly remedial and prescribes when and how either class of purchaser at the tax sale may obtain possession of the property purchased, and which may be done by the purchaser before the two-year period of redemption by the taxpayer expired by complying with the terms of the statute to obtain that relief. Section 4154 provides for the vesting of title in the purchaser, and which ipso facto happens thereunder if the taxpayer does not redeem the land within the two years given him for that purpose. Section 4156 makes provision for redemption by certain persons laboring under legal disability. The petition alleged in setting out this ground, and counsel so argues in this court, that the new act is invalid because it is in conflict with such parts of the sections supra of our statute to such an extent as to render the body of the law relating to the sale of real estate for taxes incapable of enforcement because of the confusion and perplexity introduced by the new act; but with which we cannot agree. We have hereinbefore pointed out the only changes made in the old act by the new one. None of them affect in the remotest degree the lien given by section 4021, which remains intact and the sale provided for by the new act is the procedure by which that lien is enforced. The only conflict between the new act and the remedial portions of section 4153 concerns the time when the purchaser may obtain possession of the land he purchased at the tax sale. Under the terms of that section he might do so (by following its provisions)

*before* the period for redemption expires, which was two years instead of five years as provided in the new act. The same remedies may still be pursued under the new act when the time arrives entitling the purchaser to possession. That time was simply postponed by the new act until the lengthened time for redemption expires, but the procedure for obtaining possession when the time therefor arrives is left intact as contained in the present section 4153.

Section 4154 enacts that the fee-simple title to the land purchased will become absolutely vested in the purchaser if the taxpayer, its owner, did not redeem it within the time given him for that purpose, which, as we have seen, was then two years from the day of sale. The new act simply postpones that period by lengthening the time for redemption by the owner to five instead of two years. Section 4156 prescribes that certain legal disabilities of the owner of the land entitles him to redeem it at any time within "one year after the removal of the disability," but required him to pay the same rate of interest and penalty prescribed for adult redeemers. No additional burden was placed on such legally disabled owners greater than what the other sections of the statutes imposed upon all other delinquent owners. To the extent that the new act conflicts with any of those sections or any of their parts, such conflicting provisions are repealed by *necessary implication,* and which is one of the methods by which statutes may be repealed, and which is as effectual for that purpose as is a repeal by direct and express language.

It is, therefore, clear that the lien in favor of the tax-gathering authorities is not molested by the new act, and that the right of the purchaser to obtain possession of the land purchased at such tax sales is not destroyed but only postponed, and the same is true with reference to the *vesting* of title in the purchaser under section 4154; it being only postponed by the new act. Neither does the new act destroy the right of owners laboring under disability, as contemplated in section 4156, to redeem their land within one year after their disability is removed, but the new act, as we construe it (which, however, is not necessary to be done in this case), reduces the rate of interest and penalty that such disabled persons would be required to pay upon redemption so as to conform to those amounts as is contained in the new act. We, therefore, see that such

alteration brought about by the new act is neither confusing nor perplexing, nor does the repugnancy between its terms and those of the sections mentioned create such ambiguity as to render the new act incapable of enforcement under the rule invoked by appellee's counsel.

It is also contended that the new act violates sections 51 and 171 of our Constitution, and by reason of all of which, and because it "is so indefinite that it can not be reconciled with the other parts of the system of this law (revenue and taxation) and so vague and uncertain that the same is void." The answer of defendant filed by the county attorney of Logan county denied categorically every affirmative statement made in the petition. Plaintiff demurred to that answer, which the court sustained and then rendered judgment declaring the new act invalid and granted the injunctive relief prayed for in the petition. From that judgment defendant prosecutes this appeal. We have not been favored with an argumentive brief for appellant, but our investigation of the question involved convinces us that the court was in error in rendering the judgment appealed from, since learned and earnest counsel for appellee has failed to convince us that the new act is invalid for any of the reasons stated in the petition and argued in his brief, nor have we been able to find supporting law therefor after diligent research.

What we have already said disposes of the ground of attack based on repugnancy and implied repeal of the remedial provisions of the other sections of our Statutes, and which brings us to the ground of attack that the title of the new act is in conflict with the provisions of section 51 of our Constitution, since, as argued, the word "possession" is nowhere employed in it, and, therefore, the new act is violative of that section because it deals with and makes provision concerning "the right to possession" of the purchaser of land at tax sales. The new act in its title purports to repeal and re-enact section 4151-2, which also contained provisions relating to the right of possession, and we find nothing in the title of the new act indicating any intention to relinquish the right of the Legislature to make provision concerning that subject in the body of the new act. After all, such provisions, as are contained in section 51 of our Constitution, do not require,

nor was it intended for the title of an act to contain or be, "an index to, or a synopsis of the contents of the act or set out the details thereof; but it (the title) need only indicate the general contents and scope of the act, and if it gives reasonable notice thereof it is sufficient. It is only to the contents of a statute that the title is required to point, and not to its results; and the incidental operation of the statute upon subjects other than that which it expressly details need not be expressed," in the title. 59 C. J. pp. 804-807. sec. 387. Domestic cases supporting the text are Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367, and Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008. In note 97 to the text on page 806 the correct interpretation and application of such constitutional provisions is thus tersely stated as taken from the case of In re Reber's Petition, 235 Pa. 622-631, 84 A. 587, 590: "It is not the function of the title of a bill to catalogue the results which may flow from its enactment into law. * * * It is to the contents of the statute only that the title is required to point, and not to its results." Therefore, the title need not indicate the incidental operation of the statute upon subjects other than that with which it expressly deals, and which is but another way of saying what we have hereinbefore stated that the title of an act need not indicate or contain an intention of effecting an implied repeal of any other section or sections of any other statute that may be irreconcilably in conflict with the provisions of the new act. The attacked act in this case when it provided for a five-year period for redemption by the taxpayer of his sold land necessarily postponed the steps and actions directed to be taken in the other sections of the statute referred to until the ripening of the rights of the purchaser under the new act, after which such remedies and procedures by the persons directed to take them would become available.

But it is earnestly argued that the new act will result in postponing the realization and actual collection of taxes assessed against real estate until five years from the sale, plus the necessary time for notice to obtain possession, and which, it is contended, will result in great loss to all public treasuries and, as to plaintiff in this case and all other similar ones in the state, the efficiency and ability to function in the conduct of the county public schools will be greatly hampered and largely reduced, and which, as argued, is in direct con-

flict with the provisions of section 171 of our Constitution, saying: "The general assembly shall provide by law an annual tax, which with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year." That pessimistic prophecy is bottomed upon a surmise that the penalization of the taxpayer by the new act, consisting of interest and penalty, is so small and the long time for redemption is so alluring that the landowners will take advantage of it and not redeem their land until after the time for redemption has expired and the right of possession has accrued by the giving of notice, during which time the public functionary to which the tax is due will have to otherwise supply itself with the necessary funds for operation. Such a contention is possible, but after all it is, as we have said, based entirely upon a surmise which may or may not happen. The facts creating such possibility were before the Legislature when it enacted the new act, and which affects exclusively the question of the wisdom of the act and not the question of its validity.

The argument of counsel in its last analysis is, that it is the function of the courts to determine whether or not the burdens imposed upon a delinquent taxpayer are, or are not sufficient to induce him to make prompt payment, and if found not to be so, then to declare the statute imposing them invalid and void. But we have been cited to no authority, nor have we been able to find one, upholding that contention. On the contrary, the law everywhere seems to be that the Legislature is the sole judge of such matters, and that its action with reference thereto is not the subject of court review so long as no constitutional provision is invaded. There will be a regular session of our Legislature less than a year from this time, and, at that session the unwise and disastrous effects of the new act, if any, may be corrected by that body, but which is a question not for our determination.

But, independently of any such consideration, the mandatory requirement contained in the excerpt from that section of our Constitution (171) cannot be enforced by the court. The section is clearly *not* self-executing but requires legislation to put it in force. Whether or not the Legislature shall enact the necessary statutes for that purpose is a matter resting en-

tirely in its discretion, subject to no control whatever by any other department of government. That universal rule of constitutional interpretation is thus stated in 12 C. J. 741, sec. 152: "The legislature is not duty bound to perform all duties imposed on it by the constitution, but if it fails to do so, and neglects or refuses to pass legislation as required by a mandatory constitutional provision, there is no remedy." Many cases supporting that excerpt are contained in note 58 to the text, and which cites no contrary ones. Substantially to the same effect is the text in 6 R. C. L. p. 58, sec. 54, and p. 155, sec. 154, and our investigation discloses that it is of universal recognition, being approved by all courts before which the question has been presented. As will be seen, our Legislature in the enactment of the new act did not refuse to carry out that constitutional provision. Its only dereliction in that respect, according to the contention of plaintiff and its counsel, consists in providing what they term insufficient coercive measures to bring about a quick realization of the amount of the tax. In other words, they contend that the Legislature in enacting the new act was guilty of a pro tanto failure to comply with the inserted constitutional provision. However, if that be true (but concerning which we express no opinion), neither we, as a court, nor did the trial court, have any jurisdiction to correct any such alleged failure, if any, since if no such authority exists when there is entire failure of the Legislature to act there would necessarily be none in case of insufficient action. The Legislature could have repealed the old act in toto without providing a substitute therefor, and courts could grant no relief, and by the same token they are without jurisdiction to remedy a gesture that only approaches toward a complete fulfillment of the constitutional mandate, which plaintiff claims is the effect of the new act. We, therefore, conclude that the court erred in sustaining the demurrer to the answer and in rendering the judgment appealed from.

Wherefore, the judgment is reversed, with directions to set it aside and to carry the demurrer filed to the answer back to the petition and sustain it to that pleading, and for other proceedings consistent with this opinion.

Whole court sitting.