# Burton et al. v. Mayer et al.

(Decided June 7, 1938.)

HUBERT MEREDITH, Attorney General, A. E. FUNK, Assistant Attorney General, and HENRY J. TILFORD and TILFORD & WETHERBY for appellants.

OLDHAM CLARKE, BALDWIN C. BURNAM, A. SCOTT HAMILTON, JAMES M. CUNEO, WALTER E. HUFFAKER, JOS. S. LAWTON, CHAS. W. MORRIS, H. O. WILLIAMS and LAWRENCE S. GRAUMAN for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

The question for decision is whether House Bill 385, known as the General Registration and Purgation Act, passed by the General Assembly at its regular 1938 session, is valid.

The appellees, William F. Mayer and Thomas C. Fisher, citizens, residents, taxpayers, and registered voters in Jefferson County, Kentucky, brought an action in the Jefferson circuit court against the members of the Jefferson county board of registration and purgation, the members of the fiscal court of Jefferson County, the members of the registration commission of the city of Louisville, and the county court clerk of Jefferson county to have the act adjudged unconstitutional and void, and to enjoin the defendants from taking any action pursuant to the provisions of the act. All of the defendants except the members of the Jefferson County board of registration and purgation filed an answer joining in the prayer of the plaintiffs' petition, and the members of the Jefferson county board of reg-

istration and purgation filed a general demurrer to the petition. The demurrer was overruled, and the defendants having declined to plead further, judgment was entered declaring certain sections and provisions of the act unconstitutional and void, and enjoining the defendants from taking any action pursuant to such provisions. The members of the Jefferson county board of registration and purgation have appealed, and the plaintiffs and other defendants have cross-appealed from so much of the judgment as holds other provisions of the act valid.

The act provides for a state board of registration and purgation to be composed of members of the state board of election commissioners, and imposes upon this board the duty to supervise registration and purgation under existing registration laws, and to appoint a county board of registration and purgation for each county to be composed of three citizens of the county. Section 10 of the act makes it the duty of the county board of registration and purgation to administer the registration and purgation of registration lists of voters as provided for in chapter 45 of the Acts of the General Assembly of 1936, known as the General Registration Act, Kentucky Statutes, section 1486bb-1 et seq., and to examine the registration lists and registration books in the county clerk's office and in the office of the board of registration commissioners of cities of the first class as often as they may deem it advisable, and the act makes it their express duty to examine the registration books after the closing date of the said books for registration and before any general, special, or primary election for the purpose of removing from the registration lists or books the names of persons who have, since the date of their registration, by death or otherwise, become disqualified to vote. If the board finds upon investigation, or has reasonable grounds to believe, that there are names of persons on the registration lists or registration books who have become disqualified to participate in any special, general, or primary election, it shall prepare a list of such names, "but no name of any voter shall be stricken or purged from the registration lists or registration books by the county board of registration and purgation until the board has given the voter who is challenged an opportunity to be heard." The act provides for a written notice to the voter whose right to vote is challenged, and he is given five days

within which to appear before the board and show cause why his or her name should not be stricken from the registration lists. By section 16 of the act, any voter whose right to vote has been denied or whose name has been stricken from the registration lists or registration books must perfect his appeal to the county judge or to any circuit judge, as is provided for in the act, five days prior to any primary, special, or general election. The same section provides that no decision of any purgation officer or board, affecting the right of the voter to vote in any election or removing, transferring, canceling, or suspending his registration shall be rendered later than eight days before any election. Section 17 of the act provides that if the purgation board finds that a voter is properly registered, but is not entitled to vote in the next election, whether primary, general, or special, his name or card shall be removed from the registration records and not sent to the precinct on election day, and his name or card shall be kept in a suspended list until he is eligible to vote. Section 11 of the act provides that members of the county board shall serve without compensation except in counties containing cities of the first class, where they shall receive $1,200 each per annum, to be paid by the fiscal court, and that purgation officers employed by the county board shall serve without compensation except in counties having cities of the first class, where they shall receive not to exceed $5 each per day.

The circuit court adjudged the act to be invalid in four particulars: (1) Those provisions of the act which apply to cities of the first class and purport to amend, extend, repeal, or otherwise change the Model Registration Act of 1930, Kentucky Statutes, Sections 1486b-28 to 1486b-61, because it violates section 51 of the Constitution of Kentucky by making special provisions for registration and purgation in cities of the first class, and by amending the Model Registration Act, which subjects are not expressed in the title; (2) it violates sections 147 and 160 of the Constitution in so far as it applies to cities of the first class; (3) section 11 violates sections 59 and 147 of the Constitution of Kentucky in so far as it provides compensation to purgation officers and members of the county board in counties having a city of the first class; and (4) section 17 of the act is unconstitutional because a legally registered voter whose name is placed on a suspended list is

deprived of his right to vote without an opportunity to be heard.

At the outset, it may be said that the wisdom or propriety of an act of the Legislature is not a matter for the courts to determine. When the validity of a legislative act is challenged, the sole duty of the courts is to determine whether or not it violates any constitutional provision, and, in solving this problem, it is their duty to adopt such construction as will render the statute constitutional if its language will permit. A correlative rule, universally recognized, is that every doubt and presumption will be resolved in favor of the validity of an act of the Legislature, and courts should not declare an act of the Legislature unconstitutional unless satisfied of its unconstitutionality beyond a reasonable doubt. Martin v. J. Bacon & Sons, 268 Ky. 612, 105 S. W. (2d) 569; Shannon v. Wheeler, 268 Ky. 25, 103 S. W. (2d) 718; Federal Chemical Company v. Paddock, 264 Ky. 338, 94 S. W. (2d) 645; Linton v. Fulton Building & Loan Association, 262 Ky. 198, 90 S. W. (2d) 22; Talbott v. Laffoon, 257 Ky. 773, 79 S. W. (2d) 244; Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 L. R. A. 534; Commonwealth Life Insurance Company v. City of Paducah, 244 Ky. 756, 52 S. W. (2d) 704; Fiscal Court of Pendleton County v. Pendleton County Board of Education, 240 Ky. 589, 42 S. W. (2d) 885. Our state Constitution is not a grant of power to the Legislature as is the federal Constitution, but is a limitation upon its powers, and it possesses every power not denied to it by the Constitution of the state or of the United States. Hart v. Rose, 255 Ky. 576, 75 S. W. (2d) 43; Rouse v. Johnson, 234 Ky. 473, 28 S. W. (2d) 745, 70 A. L. R. 1077; Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606. The question of the validity of the statute before us is therefore narrowed to an inquiry as to whether or not it contravenes any constitutional provision. The chancellor held, and the appellees on this appeal argue, that the act violates section 51 of the Constitution in two respects: (1) The title to the act does not give notice that the act contains any provisions dealing specially with registration and purgation in cities of the first class and amends the Model Registration Act; and (2) the act revises, amends, and extends both the Model Registration Act and General Registration Act in many respects.

without re-enacting or publishing at length any of the provisions so revised, amended and extended. Section 51 of the Constitution reads:

> "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

This section has probably been the source of more litigation involving the validity of legislative acts than any other section of the Constitution. Its purpose, as often stated in the opinions of this court, was to require that the title to an act should give to interested persons fair and reasonable notice of the nature of the provisions contained in the act. The title need not contain details, but is sufficient if the general terms employed therein are broad enough to embrace the subject-matter dealt with in the body of the act. Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651; Talbott v. Laffoon, 257 Ky. 773, 79 S. W. (2d) 244; Russell v. Logan County Board of Education, 247 Ky. 703, 57 S. W. (2d) 681. In Thompson v. Com., 159 Ky. 8, 166 S. W. 623, it was said that the purpose of this section of the Constitution was (page 625) "to enable persons reading the title of an act to get a general idea of what the act treated of or contained, and it has come to be a recognized legislative practice for members and others interested in legislation to read the title of acts and gather therefrom, in a general way at least, the subject-matter of the act, and under the authority of this constitutional provision members of the Legislature, as well as the public interested in legislation, have the right to rely on the title as indicating the subject-matter of the act and to assume that the act contains no legislation that is not embraced in a general way by the subject expressed in the title."

The title to House Bill No. 385 reads:

> "An act relating to primary and general elections and providing for a State-wide purgation of the registration lists of voters in the Commonwealth of Kentucky and providing for a State-wide registration and purgation board, and creating a county

registration and purgation board for each of the counties in the Commonwealth of Kentucky, and prescribing their duties, and term of office, and providing for salaries and expenses of said boards and employees, and repealing, amending and re-enacting section 1486bb-13, Carroll's Kentucky Statutes, 1936 Edition, and repealing all laws in conflict herewith, and declaring an emergency.''

The title limits the act to registration and purgation, and the body of the act deals only with the subject of purgation. Prior to the passage of House Bill No. 385, there were two registration laws in force; one dealing with registration in the city of Louisville, known as ''The Model Registration Act for Cities of the First Class,'' and another dealing with registration throughout the rest of the state, known as ''The General Registration Act.'' The Model Registration Act, which was adopted in 1930, chapter 48, of the Acts of 1930, Carroll's Kentucky Statutes, section 1486b-28, et seq., created a complete system of registration in the city of Louisville, and provided an effective method for the purgation of the registration lists of voters prior to the general election, but made no provision for purging the lists prior to a primary or special election. The General Registration Act, passed at the 1936 session of the General Assembly, chapter 45, of the Acts of 1936, Carroll's Kentucky Statutes, section 1486bb-1, et seq., created a system of registration for all territory outside the city of Louisville, but provided no comprehensive method for the purgation of the registration lists. The purpose of the 1938 Act is to provide for the purgation of registration lists in both primary and general elections in the whole state outside the city of Louisville, and in primary elections in the city of Louisville. It is obvious that if a purgation of the registration lists is necessary to prevent fraud in a general election, it is also necessary to prevent fraud in other elections. The title gives fair and reasonable notice to interested persons that the whole field of purgation of registration lists is covered in the body of the act, and that any provision of an existing law relating to purgation may be affected. The clause, ''providing for state-wide purgation of the registration lists of voters in the Commonwealth of Kentucky,'' is susceptible of no other reasonable interpretation. The whole includes all the parts, and one reading the title of the act would reason-

ably conclude that the General Assembly proposed to enact a general law on the subject of purgation applicable to every section of the state, including Jefferson County and the city of Louisville.

It is also argued that the act violates section 51 of the Constitution because it revises, amends, or extends several provisions of the Model Registration Act without re-enacting and publishing such provisions at length. Section 51 of the Constitution merely provides that no law shall be revised, amended, or the provisions thereof extended by reference to its title only, and requires that so much thereof as is revised, amended, or extended shall be re-enacted and published at length. The only section of the two existing registration acts referred to in the title of House Bill No. 385 is section 13 of the General Registration Act, and this was re-enacted and published at length. The 1938 act does not attempt to revise, amend, or extend other provisions of either of the two existing registration acts by reference to the title only of such act. It purports to be a general act, relating to the subject of state-wide purgation of registration lists. Therefore, it was not necessary to refer in the title to any preceding act which might be affected. Petty v. Talbott, 256 Ky. 688, 76 S. W. (2d) 940; Smith v. State Highway Commission, 247 Ky. 816, 57 S. W. (2d) 1014; Gross v. Fiscal Court of Jefferson County, 225 Ky. 641, 9 S. W. (2d) 1006; City of Owensboro v. Board of Trustees, 210 Ky. 482, 276 S. W. 143; Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008. In Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, 1021, the court, referring to the latter part of section 51 of the Constitution, said:

"This part of the section has, of course, no application to acts that do not purport to revise, amend, or extend another act or law. When the Legislature comes to enact new laws under appropriate titles, its power is not in any manner limited by this provision, and it may act entirely independent of and without reference to it. Of course, many laws that are enacted by the Legislature touch in some way existing laws, either by amending, extending, or repealing them, but, notwithstanding this, the Legislature, by a new act that does not purport in its title or body to amend, revise, or extend an existing law, may, in fact, revise, amend,

or extend it, free from the control of section 51, and this has been often done."

A liberal construction of this section of the Constitution which has always been given, Bowman v. Hamlett, supra, is not required in order to reach the conclusion that House Bill 385 does not contravene its provisions. Application of the rules heretofore stated compels the conclusion that the act is not invalid in this respect.

The chancellor held that the act was invalid, in so far as its provisions affected registration and purgation of registration lists in the city of Louisville, in that it violated sections 147 and 160 of the Constitution when those sections are read together. Section 147 requires the Legislature to provide for the registration of all persons entitled to vote in cities and towns having a population of 5,000 or more, and section 160 provides that officers of cities and towns shall be elected by the qualified voters therein or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide. The chancellor's conclusion was necessarily based on the theory that officers having charge of registration and purgation in cities are officers of such cities within the meaning of section 160 of the Constitution, and therefore, the members of the Jefferson county board of registration and purgation who are appointed by the state board are without authority to act in the city of Louisville. We find nothing in these two sections of the Constitution authorizing such a conclusion. Registration and purgation officers are state, not local, officers. In Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 50 S. W. 264, 20 Ky. Law Rep. 1146, it was contended that an act which conferred power upon the state election board to appoint members of county boards and to invest them with the power to appoint election officers and to act as canvassing and contesting boards violated the principle of local self-government and was unconstitutional. It was held that the duties imposed upon officers of election, as well as those assigned to the boards, concerned the state government, and that the Constitution did not forbid exercise of legislative discretion as to that matter. In Board of Registration Commissioners v. Campbell, 251 Ky. 597, 65 S. W. (2d) 713, in which the Model Registration Act of the city of Louisville was under review, the court said (page 718):

"There is no difference in law between regis-tration and election. Registration is the method of proof by a public record for ascertaining and identifying the electors residing in each precinct who are qualified to cast votes in the election of each year. It is a part of the machinery of elections. People ex rel. Stapleton v. Bell et al., 119 N. Y. 175, 23 N. E. 533; O'Brien v. City of Sara-toga Springs, 131 Misc. 728, 228 N. Y. S. 82, 83.

"The conduct and control of the registration of voters are governmental functions, and the offi-cers upon whom the law imposes the duty of mak-ing and preserving the same are representatives, and under the authority, of the state. They are agents of the state, and not of the political party designating them, or of the city authorities appoint-ing them or of the applicant for registration."

The chancellor held, and it is argued by appellees, that section 11 of the act violates section 59 of the Con-stitution, which prohibits local and special legislation in certain respects. Section 11 provides that members of county boards shall serve without compensation ex-cept in counties containing cities of the first class, where they shall receive $1,200 each per annum, to be paid by the fiscal court of the county of their appointment in monthly installments, and that purgation officers shall serve without compensation except in counties having cities of the first class, in which counties they shall re-ceive compensation not to exceed $5 each per day. The chancellor's conclusion, that the classification as to pay-ment of salaries was not based upon natural and rea-sonable distinctions and that the act therefore violated section 59 of the Constitution, resulted apparently from his conclusion that the act was unconstitutional in so far as it applied to the city of Louisville, and that there-fore the duties of the Jefferson county board of regis-tration and purgation were no different from the duties of other county boards. In view of our conclu-sion that the act is not unconstitutional in so far as it applies to the city of Louisville, there is undoubtedly a reasonable basis for the classification which would re-quire the payment of salaries to the members of the Jefferson county board. Their duties are far more arduous and exacting than those of board members in other counties, and, on account of the large population

in the city of Louisville, its density, and changing and shifting character, the problems to be met and solved by the county board of registration and purgation differ radically from those in less densely populated counties. Section 59 of the Constitution does not forbid classification based on reasonable and natural distinctions. Withers v. Board of Drainage Commissioners, 270 Ky. 732, 110 S. W. (2d) 664; Com. ex rel. v. Griffen, 268 Ky. 830, 105 S. W. (2d) 1063; Middendorf v. Jameson, 265 Ky. 111, 95 S. W. (2d) 1057; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460; Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114.

In Shannon v. Wheeler, 268 Ky. 25, 103 S. W. (2d) 718, the validity of section 4072, Kentucky Statutes, was assailed on the ground that it violated section 59 of the Constitution. Section 4072 of the Statutes provides that, in counties containing cities of the first class, the county tax commissioner shall be entitled to receive out of the state treasury an advancement of $5,000 per month to defray necessary official expenses and partial payment upon the salaries of himself and his deputies and assistants. It was held that the natural scope and character of the tax commissioner's duties in Jefferson county and the complexities of his office were such as differentiated the office from the offices of other county tax commissioners, and furnished a reasonable basis for the classification made by the Legislature. In Herold v. Talbott, 261 Ky. 634, 88 S. W. (2d) 303, section 1763-1 of the Kentucky Statutes, which fixes the salaries of certain officers in counties having a population of 75,000 or over and up to 200,000, was held not invalid as being local or special legislation. In Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11, chapter 147, Acts 1932, now section 1083a-1, et seq., Kentucky Statutes, was held to be constitutional. The act applied only to counties containing a population in excess of 250,000. It reduced the number of magisterial districts in such counties to three, and provided that justices of the peace, constables, and deputy constables should be paid a salary by the county. In the course of the opinion it was said (page 17):

> "Tested by the established principles as herein stated, and as they have been often reiterated by this court in many like cases, it is our conclusion that the classification, as made by the act here pre-

sented, was abundantly authorized by, and that no one of its provisions contravenes, infringes, or trespasses upon, either subsection 1 of section 59, or subsction 18 of section 59, or subsection 29 of section 59.''

In the light of these authorities, it cannot be said the classification adopted by the Legislature in House Bill 385, whereby the members of the Jefferson county board of registration and purgation shall receive annual salaries whereas members of other county boards serve without compensation, is arbitrary or unreasonable.

Appellees rely on Atherton v. Fox, 245 Ky. 718, 54 S. W. (2d) 11, in support of their contention that the act in question violates sections 59 and 147 of the Constitution, but the act under consideration in that case provided for registration by all voters in counties containing a city of the first class without requiring registration in any other county outside the corporate limits of cities of the first, second, third and fourth class. It was merely held that section 147 of the Constitution required that any legislation which provides for the registration of voters residing outside the corporate limits of cities must apply to all such voters in the state, and that the act also violated sections 59 and 156 of the Constitution, since it required registration of voters in three cities of the sixth class when there was no law requiring registration in other sixth class cities of the state. House Bill 385, in adopting a classification whereby members of the county board of registration and purgation are paid a salary in counties containing a city of the first class, is not in conflict with the principles announced in the Atherton Case. The act provides for the payment of a salary not to exceed $5 per day to each of the purgation officers in counties containing a city of the first class, and it is argued that their duties do not differ from the duties of purgation officers in other counties and that is an unreasonable classification. A majority of the court concurs in this view, and is of the opinion that the act is invalid in so far as it provides that purgation officers shall receive a salary in counties containing a city of the first class to be paid by the fiscal court, whereas in other counties such officers are required to serve without compensation. The act authorizes the appointment by the county board of two purgation officers in each precinct, and it

is their duty to purge the registration lists of the precincts for which they are appointed. The duties of purgation officers in Jefferson county are precisely the same and are no more onerous than the duties of purgation officers in other counties. The unit of their activity is the precinct, and, since the precincts throughout the state are required by statute to contain approximately the same number of voters, the work performed by purgation officers in Jefferson county cannot differ materially from the work performed by similar officers in other counties. Section 1443 of the Statutes provides that each precinct in the state shall contain, as nearly as practicable, three hundred voters, but no precinct shall contain more than three hundred and fifty voters. The court concludes therefore that there is no reasonable basis for classification in this respect, and that so much of section 11 of the act as provides for compensation for purgation officers in counties containing cities of the first class is invalid.

The chancellor held that section 17 of the act is unconstitutional because it fails to provide for a hearing for registered voters whose names are placed on the suspended list. Section 17 reads:

"If the County Board of Registration and Purgation or any Board of Registration Commissioners in any city of the first class shall find that there are names upon the registration lists or registration books who are properly and legally registered but further find that any of said voters are not entitled to vote in the next primary, general or special election, they shall not cancel said registration but shall cause the registration authorities to remove the registration cards or names of such voters from the registration lists or registration books so that said names shall not be sent to the precincts on election day for said coming election in which the said voters are not qualified to participate. The registration officers shall place said registration cards in some secure place to be held and identified as suspended lists or registered voters and the names of said voters shall not be replaced in the registration lists of registration books by the registration officers until such time as said voters may be eligible to vote and such voters will not be required to re-register."

Counsel for appellants frankly concede that this section is invalid if registered voters whose names are placed on the suspended list are deprived of the right to vote without a hearing. Section 17 does not expressly provide for a hearing, but, when the act is considered as a whole, it is readily apparent that voters whose names are placed on the suspended list are entitled to notice, a hearing, and the right to appeal, as are voters whose names are stricken from the registration lists. The right to remove registration cards or names of registered voters from the registration lists or registration books without notice or a hearing would open the door to gross fraud, the very result the act is designed to prevent. Clearly it was not the intention of the Legislature to give the board of registration and purgation any such arbitrary power. Throughout the act, the rights of a voter to notice, a hearing, and an appeal, where his status as a voter has been affected, are emphasized. In section 12, it is provided that no voter's registration shall be changed, transferred, or canceled until the voter has been notified and given a reasonable opportunity to be heard. Section 15 provides that any voter whose right to vote has been challenged by the purgation officers or the board of registration and purgation may appeal from such decision directly to the county judge or to any circuit judge in the county. Section 16 provides that any voter whose right to vote has been denied or whose name has been stricken from the registration lists or registration books shall perfect his appeal to the county judge or to any circuit judge, five days prior to any primary, special, or general election. The section concludes with this provision:

> "Provided, further, that no decision of any such purgation officer or County Board of Registration and Purgation or Board of Registration Commissioners for any city of the first class *affecting* the right of the voter to vote in any primary, general or special election or removing, transferring, cancelling or *suspending* his registration, shall be rendered by such purgation officer or Board later than eight days before any election."

It is an elementary principle that where the validity of a statute is assailed and it is susceptible of two interpretations, by one of which it would be unconstitutional and by the other it would be valid, the court

should adopt the construction which would uphold it. Monmouth Street Merchants' Bus Association v. Ryan, 247 Ky. 162, 56 S. W. (2d) 963. As was said in Commercial Banking & Trust Co. v. Citizens' Trust & Guaranty Co., 153 Ky. 566, 156 S. W. 160, 165, 45 L. R. A., N. S., 950, Ann. Cas. 1915C, 166:

> "When a legislative act is susceptible of a dual construction, one of which secures equality and equity, and the other paves the way to the perpetration of fraud, no court would hesitate to adopt that construction insuring fair dealing."

A companion rule of construction is that courts in determining the legislative intent are not restricted to the particular section attacked, but must read and construe the act as a whole. Baker v. White, 251 Ky. 691, 65 S. W. (2d) 1022; 25 R. C. L. 1006. When these rules of construction are applied in the instant case, it is not difficult to reach the conclusion that the Legislature intended to provide for the same procedure as to notice and hearing in cases where names of voters are placed in the suspended list and in other cases where their right to vote has been denied.

On the cross-appeal, the appellees argue that the entire act is invalid because (1) It violates sections 27 and 28 of the Constitution of Kentucky; (2) it abridges and impairs the right of suffrage by requiring an unnecessary and unreasonably long closing of the registration records, and violates sections 6 and 145 of the Constitution of Kentucky; and (3) it violates the Fourteenth Amendment to the Constitution of the United States, U. S. C. A. Constitution Amendment 14, by providing that a citizen may be deprived of his right to vote without due process of law, and by denying equal protection of the laws, and it violates section 6 of the Constitution of Kentucky by authorizing administrative officers to deprive a person legally registered of his right to vote without due notice and without an opportunity to be heard.

The act provides that the state board of registration and purgation shall be composed of the members of the state board of election commissioners, one of whom is the clerk of the Court of Appeals. It is claimed by appellants that the clerk of the Court of Appeals, as an officer of the Judicial Department of the state, is disqualified from holding an office in the Executive De-

partment, and that the act, therefore, violates sections 27 and 28 of the Constitution, which divide the powers of government into three distinct departments and provide that no person being of one of those departments shall exercise any power properly belonging to either of the others. The clerk of the Court of Appeals performs no judicial duties, and is not a judicial officer within the meaning of section 27 of the Constitution.

The second objection to the act as a whole is that section 14 abridges and impairs the right of suffrage by requiring all registration books to be closed for an unnecessary and unreasonable length of time each year. Section 14 requires that all registration records be closed fifty-nine days prior to any primary or general election, and remain closed until ten days after such elections. Thus a voter has more than seven months each year during which he can register. Section 6 of the Constitution provides that all elections shall be free and equal, and section 145 relates to the qualification of voters. In Perkins v. Lucas, 197 Ky. 1, 246 S. W. 150, relied upon by appellees, chapter 138 of the Acts of 1922, which provided for the registration of all voters in the state, was declared invalid as being in violation of section 6 of the Constitution, but that act provided only one day each year for registration. In City of Owensboro v. Hickman, 90 Ky. 629, 14 S. W. 688, 12 Ky. Law Rep. 576, 10 L. R. A. 224, an act providing for registration of voters in the City of Owensboro was declared invalid because it was not a reasonable regulation of the election franchise. The act provided only three days for registration, the first Monday in July and the two succeeding days. These acts differed materially from the act before us. The Model Registration Act for cities of the first class provides that no person shall have the right to register during the period of sixty-five days in every year, commencing fifty-nine days next preceding any election held in November of any year. Kentucky Statutes, section 1486-43. The registration books are closed during the fifty-nine day period preceding the general election while the records are being purged and corrected by the board of registration commissioners of the city. This is necessary to prevent confusion. The 1938 act fixes the same period before a primary election for purging and correcting the records, and the registration books are closed during that period. The act provides ample time for each

qualified elector to register, and the regulation is not unreasonable.

It is also argued by appellees that the provisions in the act for an appeal from the ruling of the county board of registration and purgation is not ample, and a citizen may be deprived of the right of suffrage without due process of law. The act provides that, in counties containing a city of the first class, a canvass shall be made in each precinct by two investigators appointed by the county board, such canvass to be made during the first two weeks of the fifty-nine day period next preceding the date upon which the election is to be held. The investigators must make a written report to the board of registration commissioners of the city not later than the last day of the two week period. When the reports of the investigators agree that any person registered therein is not legally entitled to vote at the election to be held in such year, the county board of registration and purgation shall cause the board of registration commissioners of the city to remove, transfer, or cancel such registration, provided, however, that no such change shall be made until after notice shall have been mailed to the person affected, and the challenged voter is given five days within which to file a protest. In counties other than counties containing a city of the first class, notice is served upon the challenged voter, and he is given an opportunity to be heard. Section 10 of the act provides that when the board has challenged the registration of any voter, "it shall immediately notify the voter in writing at his place of residence shown upon the registration list that his right to vote in any general, special or primary election has been challenged." Section 16 of the act provides that any voter whose right to vote has been denied or whose name has been stricken from the registration lists or registration books may appeal to the county judge or any circuit judge. The board cannot render any decision later than eight days before any election, and, since the voter is entitled to five days' notice before a decision is rendered, such notice must be served at least thirteen days before the election. The act contemplates speedy action by the boards and their assistants and employees, and it should be so administered. It clearly contemplates that notices shall be served as soon as practicable after the investigators have made their reports, which, in Jefferson county,

must be filed with the board at least forty-five days before the election. In addition to the remedies provided by the act, a registered voter, who, by mistake or otherwise, has been denied the right to vote without notice and an opportunity to be heard, may resort to the courts to compel the election officers to give him a ballot. The act gives to a challenged voter ample opportunity to be heard, and it does not deprive him of the right of suffrage without due process of law. Mason v. State of Missouri, 179 U. S. 328, 21 S. Ct. 125, 45 L. Ed. 214.

The argument that the act violates section 6 of the Constitution of Kentucky by authorizing administrative officers to deprive a person legally registered of his right to vote without due notice and without an opportunity to be heard is based on the theory that section 17 fails to provide for notice to a registered voter whose name has been placed on the suspended list. Our conclusion that such a voter is entitled to notice and a hearing under the act answers this argument.

On the cross-appeal the judgment is affirmed, and on the original appeal it is affirmed in so far as it adjudged the provision in section 11 of the act for compensation to purgation officers in counties containing a city of the first class invalid, and in all other respects it is reversed for further proceedings consistent herewith.

Whole court sitting, except Clay, J.