## Booth et al. v. City of Owensboro et al.

(Decided Nov. 22, 1938.)

LaVEGA CLEMENTS and E. B. ANDERSON for appellants.

R. MILLER HOLLAND, O. L. FOWLER, and CARY, MILLER & KIRK for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

By appropriate ordinances, passed and published in August, 1938, the Commissioners of the City of Owensboro provided for the issuance and sale of 3% bonds payable out of the revenues of the municipally owned electric light and power plant and water works, the former in the sum of $950,000 and the latter $350,000. The proceeds supplemented by a grant of $1,041,000 of the Federal government are to be expended for adding to and rehabilitating the two utility plants. On petitions signed by the requisite proportion of the voters of the City, referenda upon the adoption of these ordinances were held at the regular November, 1938, election. Section 3480b-23, Statutes. The vote in favor of adopting the ordinance providing for the electric light and power plant bonds was 3,141 and that against 2,427, a majority of 714 favorable to the adoption. The vote in favor of the water works bonds was 3,073 and that against 2,398, giving a favorable majority of 675.

This suit was instituted by W. B. Booth, a taxpayer and patron of the utilities, questioning the legality of the procedure and seeking to enjoin the issuance of the bonds. E. B. Anderson, another taxpayer and patron, filed an intervening petition seeking the same end. The circuit court held the procedure authorized and the bonds valid. Booth and Anderson appeal.

The ordinance relating to the issuance of revenue bonds for the water works and steps taken under it conform to the provisions of Section 2741L-1 et seq., Statutes. This is an Act of 1926, Chapter 133, later amended

in particulars not affecting water works of a city of the third class. The consent of the electorate through compulsory referendum is not required by this statute. The act created an alternate authority and method of financing the acquisition, extension, addition or improvement of water works plants. Section 2741L-19. The other authority of a city of the third class to acquire water works is contained in Section 3290-5, Statutes (an Act of 1893, Chapter 222), vesting in the council authority to provide the city and the inhabitants thereof with water. However, that authority was qualified in 1910 by what is now Section 3290a-1, Statutes, providing that such city owning a water works system shall not "sell or convey or lease or mortgage or otherwise encumber the same, or the income therefrom, without the assent of two-thirds of the total number of legal voters of such city or town," etc. In City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, it was held that this condition or qualification does not apply to the authority established by the Act of 1926, now Section 2741L-1 et seq., Statutes. Inasmuch as the provisions of this later statute and of Section 3480b-23, Statutes, relating to a referendum on any ordinance of a city of the third class were strictly followed, the appellants do not now question the validity of the water works bonds.

The appellants do maintain that the electric plant bonds are invalid because the procedure required by Section 3480d-1, Statutes, was not followed. This statute authorizes a city of the third class, as well as one of the second, fourth, fifth and sixth class, to acquire or erect, maintain and operate an electric light, heat and power plant and to extend, add to or improve such public utility. It may finance the acquisition or betterment by issuing bonds payable out of the revenues of such plant. But the statute as published conditions these things upon the approval of a majority of the electorate by submitting the question in a particular manner.

The original act (Chapter 119, Acts of 1932) was in all respects like the 1926 act relating to water works except that it was confined to cities of the third class, provided for compulsory referendum when it was proposed to purchase an existing electric plant from private owners, and for a city utility commission to operate any plant acquired. This act was amended in 1936 by Chapter 77 of the acts of the regular session of that General Assembly. A substantial part of the amend-

ment is the condition precedent of a compulsory referendum and resulting approval of a majority of the voters. Though this proposition to issue bonds of the electric plant was submitted to the citizens of Owensboro, it was done under the statute of general application to ordinances of cities of the third class operating under the commission form of government. Section 3480b-23. And though a majority of the voters answered in the affirmative that the ordinance should go into effect, neither the manner nor form of the submission was in accordance with the 1936 amendment to the 1932 Act, i. e., Section 3480d-1, Statutes. It is, therefore, conceded by the appellees that if the 1936 amendment is valid, the bonds are not valid. They argue, however, that that portion of the 1936 act is unconstitutional.

The title to the Act of 1936 is as follows:

"An Act to amend and re-enact the Title and Section one (1) of an Act of the General Assembly which was adopted at its regular session in one thousand nine hundred thirty-two (1932), and entitled 'And Act enabling cities of the third class to acquire, construct, operate and maintain electric light, heat and power plants and to issue revenue bonds of such cities to pay the cost thereof, payable solely from the revenues of such works without the incurrence of indebtedness of said cities,' so as to extend the provisions thereof to cities of the second, fourth, fifth and sixth classes."

It is to be observed that this very important enactment requiring a favorable referendum is in no way or degree indicated in its title. Section 51 of the Constitution provides that any law enacted by the General Assembly must have its subject expressed in the title. The interpretation is that if the title is general in its reference to the purposes or contents of the act it is sufficient to embrace anything in the context, that is, anything in the body of the act which is germane or not foreign to the subject expressed in the title. But if the title is specific as to the contents and scope of the act, or is limited to specific things of a general subject, the context must be confined to those particular things of which the title may be said to give reasonable notice. Thompson v. Commonwealth, 159 Ky. 8, 166 S. W. 623; South v. Fish, 181 Ky. 349, 205 S. W. 329; Duke v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839; Campbell v. Commonwealth,

229 Ky. 264, 17 .S. W. (2d) 227, 63 A. L. R. 932; Russell v. County Board of Education, 247 Ky. 703, 57 S. W. (2d) 681; State Budget Commission v. Adams, 249 Ky. 680, 61 S. W. (2d) 314; Talbott v. Laffoon, 257 Ky. 773, 79 S. W. (2d) 244.

As has been said heretofore, the construction or particular application by the court of this constitutional requirement ought not to be strained, for always all conscientious efforts must be made .to sustain the validity of an act of the General Assembly.  Sometimes, as a practical matter, the nature of the act or the portion omitted from the title makes the failure to observe it strictly of little consequence.   If the .title can be said to accomplish the purpose of the constitutional mandate it will be deemed sufficient.  Regarding that, Judge Miller wrote in South v. Fish, 181 Ky. 349, 205 S. W. 329, 332:

> "It has been aptly said that the purpose of- this constitutional provision concerning titles to legislative acts is, first, to prevent log-rolling legislation; second, to prevent surprise or fraud upon the Legislature, by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon."

We think this instance is a clear exemplification of its wisdom and a striking example of its violation.  The title to the 1936 amendment only advised that the proposed act merely extended to other cities the existing statute enabling cities of the third class to acquire or improve their electric plants and thus bring the law on the subject in harmony with the law relating to their water works.  The title indicates only extension.  The body contains a substantial restriction.  Its omission was concealment.  Members of the legislature particularly interested in legislation affecting cities of the third class could not have known from reading the title that their existing power as to this subject was being materially curbed.  No member was advised by the title that the extension of the authority to cities of the other classes was being likewise limited.  The people who are usually apprised of proposed legislation through publi-

cation of only the title of pending bills or the substance thereof in the Legislative Digest and newspapers probably were never informed of this change in the existing law.

The status or character of the 1936 Act now before us is similar to that considered in South v. Fish, supra. The title to an Act of 1918 indicated an amendment was a codification of existing statutes on the subject of public health in certain specified ways. But the body of the Act established a new Board of Health, prescribed the manner of selection of its members and defined their qualifications. In overruling a motion to dissolve a temporary injunction, which had the effect of holding the Act unconstitutional in that respect as offending Section 51 of the Constitution, after analyzing the Act and considering many precedents, Judge Miller concluded:

"In short, subsection 20 bears all the marks of being an interpolation to an act otherwise carefully drawn; and, as heretofore shown, the purpose of the constitutional provision is to prevent interpolations which are irrelevant to the title of the act."

The opinion, adopted by the court through publication, held that the subsection of the Act was void for that reason. The principles and reasoning of that opinion constrain us to hold that that part of Chapter 77 of the Acts of 1936, and of Section 3480d-1 of the Statutes, beginning, "Provided, however, that before any such city shall be authorized or empowered to purchase or establish and operate an electric light, heat and power plant" to the end thereof is void and not constitutional. The case does not require an expression of opinion as to whether the other part of the 1936 Act, which extends the 1932 Act to cities of the second, fourth, fifth and sixth class, is valid or is void. In either event, the power of the cities of the third class remains the same.

With this portion of the published statute eliminated, the law in relation to issuing revenue bonds for the acquisition, improvement and extension of electric plants by cities of the third class is the same as that in relation to water works; and since it is an alternate plan and authority distinct from the general power vested in such cities by their original charter, qualified by the Act of 1910 (Section 3290a-1, Statutes), it must be held, as it was in City of Bowling Green v. Kirby, supra, that the conditions prescribed by that statute do not apply.

It, therefore, appears that the City of Owensboro in both of the present ventures has exercised a lawful power and proceeded in close accordance with the terms of the statutes.

The judgment is affirmed.

Whole court sitting.