## Commonwealth ex rel. Atty. Gen., v. Furste.

Dec. 12, 1941.

632

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for complainant.

Charlton B. Thompson and Robert C. Simmons for respondent.

OPINION BY JUDGE THOMAS—Sustaining motion.

On November 21, 1941, we delivered our opinion in this original proceeding filed in this court by the Commonwealth on Relation, etc., v. Sam Furste, Clerk of the Kenton County Court, 288 Ky. 358, 156 S. W. (2d) 198, in which a motion was made to remove respondent from his present office as county clerk of his county for certain defalcations and misfeasances set forth in the complaint. We sustained that motion in our opinion so delivered and closed it by saying: ''Wherefore, it follows that the motion of the complainant filed herein is sustained, and respondent is adjudged to be removed from his present term of office.'' The word ''present'' was employed in the opinion because we found the law to be that an officer, under the provisions of Section 124 of our Constitution, could not be removed for defalcations, violations or other acts of malfeasance committed and done prior to his induction into the occupied term. More explicitly stated, we found and held that any conduct of the officer authorizing his removal must occur during his current term and only his removal from that term may be made; from which it follows that any wrongful acts or conduct perpetrated in one term will not constitute a ground for disqualifying the officer proceeded against from filling or occupying a future term of the same or another official position. Respondent, as pointed out in our opinion referred to, was elected this year (1941) to fill the same office during the ensuing term beginning the first Monday in January, 1942. So that, under the above interpretation, respondent, if not visited with the penalties for his misconduct—of which we found him guilty—by removing him from his present term (though the remainder thereof is short) will escape entirely the provided punishment prescribed in the section of the Constitution, supra, and all of the instant litigation will in that event prove futile and of no effect whatever. Therefore, complainant has entered motion for an immediate appropriate order making our opinion and direction effective and final before the expiration of respondent's present term. The disposition of that motion is the only question for determination in this opinion.

As said, the proceeding is based upon a constitutional provision which, in effect, mandatorily requires this court to visit the penalty it prescribes on any of the named officers in it, when found guilty of such acts or conduct and misfeasance as is therein denounced as supporting grounds for such removal. Our Legislature

634

by the enactment of Title XII of the Criminal Code of Practice, composing Sections 442 to and including 450, prescribes the procedure to be followed by this court in the enforcement of the constitutional section, supra, and which has been followed in this case. However, neither the constitutional provision, nor Title XII of the Criminal Code of Practice, makes any reference to the time when this court's judgment of conviction, and order of removal of respondent from his office, shall become final and effective and which, we repeat, is the only question for our determination on this submission.

At the beginning it should be said that so far as legislative enactments are concerned the proper determination of the instant motion is not affected by the question as to whether this proceeding should be regarded as a civil or a criminal one, since the statutory provision relating to the question as embodied in Section 760 of the Civil Code of Practice, and as embodied in Section 360 of the Criminal Code of Practice, are identical. It is: "That no mandate shall issue, nor decision become final, until after thirty days, excluding Sundays, from the day on which the decision is rendered, unless the court, in delay cases, otherwise direct," etc. Manifestly, the direction for the issuing of a mandate by this court could have no application to the enforcement of its judgments rendered in an original proceeding instituted before it as provided by law, since the mandate referred to in the Code sections is a direction from this court to an inferior one notifying it of this court's determination of an appeal prosecuted from a judgment of the court so notified. There is no inferior court in this case to be notified by a mandate from this court, and the requirement embodied in Section 760 of the Civil Code of Practice, or Section 360 of the Criminal Code of Practice, relating to the issuing of *mandates,* has no application to a case like this.

But it is insisted by respondent that our opinion supra, ousting the Kenton County Clerk from his office, was and is a "decision" of this court, and that the provisions of the two sections of the Code upon the question of finality refer to, not only decisions on regularly prosecuted appeals to this court, but likewise to any *decision* that it may under the law be called upon to render, and any decision of this court of either character is embraced within the provisions of the sections of each

Code. Accordingly, it is argued by counsel that our judgment of removal does not become final until thirty days, excluding holidays and Sundays, from November 21, 1941, the day on which our opinion was rendered.

To begin with, the word "decision" as embodied in the sections of the two Codes, might be construed to refer only to decisions on regularly prosecuted appeals, since other sections of the Statutes—of which they are a part—strongly indicate that only decisions on *appeal* cases are dealt with therein. But since the question for determination appears to be one of first impression, we have concluded to waive that question and to accept, only for the purposes of the case, the interpretation of respondent, i. e., that the sections of the two Codes embrace, not only *decisions* of this court on regular appeals to it, but likewise those rendered in original proceedings commenced in this court.

At the beginning of the determination of the question as so framed, it is gravely doubted whether the legislative branch of our state government may in any event prescribe *mandatory* rules for the enforcement of this court's judgments rendered in cases lawfully coming before it, and to thereby ignore and set aside the inherent power of courts to make rules for its own procedure. By so doing it is more than probable that in such an effort the Legislature would invade the provisions of Section 28 of our Constitution, saying: "No person, or collection of persons, being of one of those departments [see the preceding Section 27] shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." We have in vain searched our Constitution throughout for any provision in it directing or permitting the Legislature to prescribe such rules. However, for the purpose of preserving uniformity of procedure and thereby prevent confusion in the practice, together with the further fact that the court itself has not prescribed its own set of rules affecting the practice under consideration, this court has uniformly followed in the ordinary run of cases the enacted court rules as embodied in the respective Codes of Practice and by acquiescence has approved them and will no doubt continue to do so until modification should be attempted, if ever. Accepting then the provisions of the two sections of our Codes referred to as if they were rules made by this

court, and accepting respondent's contention that such provisions apply to our decisions on both regular appeals, as well as to decisions in original proceedings filed in this court, it is nevertheless found that, like all other rules, there are emergency occasions when such provisions should not be literally followed, since to do so would—in such exceptional cases—result in totally defeating the purposes of the law as adjudged by us in the case wherein our decision was made, and its enforcement effectually defeated.

Hence, in a number of cases—one example of which is a primary election contest case—the postponement of the Code provision of thirty days before our judgment in a regular appeal becomes final, if literally followed, would defeat the very purpose of the contest, since many such opinions are rendered and handed down when the intervening time, between then and the regular election is much less than thirty days, and which would not expire until after the regular election, notwithstanding we may have held that the prima facie nominee for the involved office was not legally nominated therefor, and that contestant is adjudged to be the legal nominee. The cases in which we have ordered forthwith mandates in that class of litigation, contrary to the sections of the Codes, are numerous and need not be listed in this opinion.

Another instance wherein the Code provisions are not followed and not held to be mandatory, is found in the case of Burton v. Mayer, 274 Ky. 263, 118 S. W. (2d) 547. That opinion was rendered on a motion identical with the instant one. The opinion which was sought to be enforced by that motion appears in the same volume of Kentucky Reports immediately preceding the above citation in a case of the same style involving the constitutionality of certain statutes pertaining to the system of registration of voters and the purging of registration lists within prescribed periods preceding any immediately following election. Our opinion, supra, appears in the same volume as the original case, the latter being reported on page 245 thereof, 274 Ky. 245, 118 S. W. (2d) 161. But in rendering the original opinion we did not direct when it should become final, hence the later motion was made and which we disposed of in the case cited, supra, being the second

one of the same style and appearing in the same volume of our local (Kentucky) reports.

The opinion rendered by us on the motion made in that case clearly substantiates what we have thus far said with reference to the question under consideration. We began our determination of the question in that opinion by declaring, in effect, that in the ordinary and usual cases coming before this court, possessing no emergency situation, the enacted court rules would be observed in putting into effect our decisions, but which, however, in that case was one made in a regular appeal prosecuted to this court. We, however, expressly declared therein that ''It is made plain in the case before us, however, that if the will of the Legislature [Constitution in this case] is to be given any effect at all, it must be put into operation now, and not some three or four weeks hence,'' [274 Ky. 263, 118 S. W. (2d) 549], and the opinion might have added ''at a time when the entire litigation would result in utter futility.''

We also repudiated in that opinion the right of the Legislature to annul and supplant the inherent power of courts to make their own rules for the enforcement of their judgments, by the enactment of legislative rules so as to control the courts in their administration of their judicial functions. Hence, it was also said in that opinion that ''The courts accept legislative *co-operation* in rendering the judiciary more effective. They deny the right of legislative dominance in matters of this kind.'' Following that pronouncement we further said therein: ''So long as the rules of practice fixed by the Legislature accord with the proper and effective administration of justice, they should be, and they are, followed to the letter. No other rule will accord with the duty of each of the three branches of government so to co-ordinate its administration as to carry into effect the purposes of the Constitution. Where, however, a situation arises in which the administration of justice is impaired or the general rules of practice are unworkable, the duty undoubtedly rests on the courts to draw upon the reserve of their inherent power, not in the assertion of a domination over other co-ordinate branches of government, but in co-operation with the legislative and executive branches to carry out the purposes of the Constitution.''

We, therefore, sustained the motion for a forthwith issuance of the mandate in that case, but with leave to

appellees to file a petition for a rehearing within the time prescribed by the Code, since it was contended in that case that the period between the time of the original opinion reported in 274 Ky. 245, 118 S. W. (2d) 161, and the rendition of the opinion on the motion (nine days) afforded an insufficient time for a consideration of the questions determined and the preparation, printing and filing of a petition for rehearing; hence, the time prescribed by the Code provisions was allowed for that purpose, since the case was one on appeal. But we also said in that opinion that ''We think that a fair time has elapsed for a conclusion to be reached upon any questions that may have been provoked by our decision, and we think it is but fair to appellants that they be not further delayed in the administration of the law.''

Other instances wherein we have observed the Code enacted rule governing application for a rehearing by the losing litigant are disbarment proceedings, which are not regular appeals to this court, but are what might be considered as instituted in this court by filing with it the proceeding of the proper bar association committee to which the charges as prescribed by law are first referred. But in that class of cases, the enforcement of no *constitutional* provision is involved, nor did any time emergency enter into the case so as to prevent our final judgment from becoming effective or its enforcement in any wise obstructed, but which fact is present in this case.

In brief of counsel for respondent, filed in opposition to complainant's motion, it is said: ''Legislative bodies, both Federal and State, prescribe rules of practice governing the Courts. This power is not questioned, and the procedural rules laid down by the legislature, with one exception, later discussed, are universally followed by the courts.'' We insert that statement—not for the purpose of approving (as therein expressed) any fundamental superior right in the legislative department to prescribe such rules—with a corresponding mandatory duty on courts to follow them—but for the purpose of emphasizing the fact that such rules, whether mandatory, or other effect they may have, are not without exceptions, which counsel say in the excerpt they will ''later discuss'' in their brief and which they do by saying: ''There is one exception to the rule that the Code of Practice must be applied in all cases. This

exception arises in those rare situations where to follow a code of practice strictly would violate a *constitutional* provision and deprive the Court of the judicial power granted it. In case of a conflict the Constitution must prevail. A striking illustration of this rule is brought out in Gouled v. United States, 255 U. S. 298, 41 S. Ct. 461, 65 L. Ed. 647.'' (Our emphasis.)

It would serve no useful purpose for us to undertake an analysis of the Gouled case, since it sustains the statement of counsel inserted, supra, to the effect that no statutory enacted rule will be followed, if by so doing it ''would violate a constitutional provision and deprive the court of the judicial power granted it. In case of a conflict the Constitution must prevail.'' In this case, as we have seen, the penalty of removal from office, because of the derelictions of which we have found respondent guilty, is a constitutional provision. It prescribes in its Section 124, supra, that respondent *''shall* be removable from office by the court of appeals, upon information and good cause shown.'' (Our emphasis.) The good cause has been found to exist, and removal from office is then mandatorily prescribed by that section, which—as we have hereinbefore pointed out— means the depriving of respondent of authority to function as such officer during the remainder of his current term. Because of the element of time entering into this case the mandate of the constitutional provision can not or might not be carried out, and our judgment would become unenforcible if the provisions of the sections of the two Codes of Practice were literally observed, since the prescribed time for the filing of a petition for rehearing will not expire until thirty days after November 21st of this year, excluding Sundays and holidays. At that time this court will be adjourned until the beginning of the winter term of 1942, commencing the first Monday in next January, on which day respondent will be inducted into his same office for another full term. Thus the full deferred period insisted on by counsel for respondent would not only defeat the purpose of the law, but also defeat the clearly expressed intention and purpose of the constitutional convention in adopting its Section 124, and which, we conclude, makes a clear case coming within the acknowledged exception to Code prescribed rules, even if they should be construed as mandatory on this court.

640

In conclusion it might be added that courts, and especially appellate ones, are inherently vested with power to regulate the practice before them, provided that no constitutional right of any litigant is thereby invaded or materially impaired. It would seem that among the more pronounced occasions for the exercise of such authority would be to determine when its opinions shall become effective. In so acting no court, we assume, would prescribe, much less follow, any rule whereby its decisions would become moot or futile, and especially when such a practice would be in direct conflict with a constitutional provision. It is our conclusion that we possess the authority to enforce our original judgment rendered in this case *now,* and before it becomes impossible to do so.

Wherefore, the motion of complainant is sustained, and respondent's office as county court clerk of Kenton county is declared vacant, to take effect on and after December 16, 1941, during which time the vacancy may be filled by the proper authority.

The whole Court sitting.